ALBANY,
August, 1822.

GOWAN
v.
JACKSON.

R. & W. GOWAN *against* J. JACKSON.

A bill of exchange, drawn in *Antigua*, upon merchants in *London*, dated *July* 18, 1817, was not presented for acceptance until *January* 16, 1818; but it had been put into circulation, and had passed into several hands, before it was indorsed to the plaintiffs: *Held*, that under the circumstances, there was no *laches* in the holders, in presenting the bill.

THIS was an action of *assumpsit*, brought by the plaintiffs, as endorsees, against the defendant, as drawer of a bill of exchange. The bill was dated *Antigua*, *July* 18, 1817, for £381 16s. 2¼d. sterling, on Messrs. *Jackson and Brothers*, *London*, payable ninety days after sight, to *Hugh Mackay*, or order, and endorsed by him, *Robert M'Nish*, jun. and by *George M'Nish & Co.*

At the trial, before Mr. Justice *Van Ness*, at the *New-York* Sittings, in *November*, 1820, the plaintiffs gave in evidence a protest for non-acceptance, dated 16th *January*, 1818, and a protest for non-payment, dated *April* 14, 1818.

The defendant's counsel objected to the protests, that they were made after such a length of time, as to show *laches* on the part of the holders of the bill; and they proved that packets went regularly from *Antigua* to *London*, once

Where the drawer of a bill is a partner of the house, or firm, on which it is drawn, it is not necessary for the holder to prove, that *notice* of its dishonour was given to the drawer.

Where the witness, a commission merchant, in *New-York*, testified, that he became acquainted with, and did much business for a merchant of *Antigua*, and understood, in the course of his business, and from general report, that he was a partner in a firm in *London*, on whom he had drawn a bill of exchange, though the witness had not known, or heard of the drawer, or of the drawees, until more than six months after the bill was drawn: *Held*, that this evidence was sufficient, *prima facie*, to show that the drawer was a partner in such firm.

in every month, or forty days; but the Judge overruled the objection.

To excuse the want of proof of *notice* of the dishonour of the bill, the plaintiffs offered to prove that the defendant was one of the firm of *Jackson and Brothers*. The defendant's counsel objected to the admissibility of the evidence, on the ground that the defendant might have separate funds in the partnership concern, if there was one, so as to be entitled to notice, as much as any third person ; but the Judge overruled the objection. *M.*, a witness for the plaintiffs, testified, that he had been acquainted with the defendant since the autumn of 1817, and being a commission merchant, had done a good deal of business for him ; and that he had always understood that the two persons connected under the firm of *Jackson and Brothers*, of *London*, were *Joseph Jackson*, the defendant, and *Daniel Jackson;* and that the firm here was *Joseph Jackson*, or *Joseph Jackson & Co.*, but which, he did not recollect. That he understood from common report, that the defendant was a partner of the firm of *Jackson and Brothers*, in *London* ; and that he had so understood in the course of his business, and in the settlements of accounts made by him with the defendant. The witness further stated, that he did not recollect that the defendant had ever mentioned to him that he was a partner of that house. That at the time the bill was drawn, he did not know the defendant, nor the firm of *Jackson and Brothers*, nor did he hear of them, until more than six months after, or as late as *February* or *May*, 1818 ; and that all that he had heard relative to a partnership between them, was subsequent to that time.

The jury found a verdict for the plaintiffs, for 2084 dollars and 10 cents.

*H. & R. Sedgwick*, for the plaintiffs. They cited 1 *Camp. N. P. Rep.* 82. 1 *Caines' Rep.* 184. *Whitney* v. *Sterling*, 14 *Johns. Rep.* 215.

*T. A. Emmet* and *Fay*, contra. They cited *Chitty on Bills*, 138. 2 *H. Bl.* 569. 4 *Cranch*, 141.

Vol. XX. 23

ALBANY,
August, 1822.

GOWAN
v.
JACKSON.

ALBANY,
August, 1822.

GOWAN
v.
JACKSON.

* Ante, p. 146.

SPENCER, Ch. J. delivered the opinion of the Court. The first point arising in this cause, as to the *delay* in presenting the bill for acceptance, was fully discussed and considered in the case of *Robinson* v. *Ames.** This is also a foreign bill, and was payable ninety days after sight, dated *July* 18, 1817, and presented for acceptance the 16*th January*, 1818; and it had been circulated and passed through several hands. For the reasons given in the case of *Robinson* v. *Ames*, we are of opinion, that there was no *laches* in presenting the bill.

The next point made by the defendant's counsel is, that the evidence to show that the defendant was a partner of the house of *Jackson and Brothers*, the drawees, did not make out the fact, either that the defendant was a partner, or that he was a partner when the bill was drawn.

The only witness, to prove the partnership, was *P. S. Mills ;* and he never heard or knew that there were such persons as the defendant and *Jackson and Brothers*, until *February* or *May*, 1818. Subsequent to these periods, *Mills* had done a good deal of business for the defendant, and had sold goods to a large amount by his orders. He had always understood there were two brothers connected in the business, the defendant and *Daniel Jackson*, and that the firm in *London*, was *Jackson and Brothers*, and the firm here was either *Joseph Jackson*, or *Joseph Jackson & Co. ;* and which, the witness did not recollect. And the witness had understood, from common report, that the defendant was a partner of the firm of *Jackson and Brothers*, in *London*. This is the substance of the evidence. When it is considered, that the bill was drawn in *Antigua*, and that there is no evidence of the defendant having done business in this country prior to the time spoken of by *Mills*, I think the evidence sufficient, *prima facie ;* and that it was thrown on the defendant to show the commencement of the partnership, if it began at a time subsequent to drawing the bill. The interval between drawing the bill, and the period spoken of by the witness, when by common reputation they were partners, was so short, as to render it improbable that the partnership commenced posterior to drawing the bill.

Considering it, then, as established, that the partnership

existed when the bill was drawn, and presented, the question arises, whether notice of non-acceptance was required to be given to the defendant. It was proved, that the bill was presented for payment on the 16th of *January*, 1818, and was then protested for non-acceptance ; and it was presented on the 16th of *April*, 1818, for payment, and protested. In the absence of all other proof, the bill must be considered as drawn by one partner of the firm, on the firm itself, in relation to the partnership business : and if so, then a knowledge by one of the firm of the dishonour of the bill, is, in point of law, knowledge by the whole firm. *Daniel Jackson*, the partner in *London*, had notice that the bill was refused acceptance and payment, for he was the person who thus refused. In *Porthouse* v. *Parker and others*, (1 *Camp. N. P.* 82.) Lord *Ellenborough* held, that where a bill had been accepted by one of the defendants, this was sufficient evidence of its having been regularly drawn ; and that, the acceptor being likewise a drawer, there would be no occasion for the plaintiff to prove, that the defendants had received express notice of the dishonour of the bill, as this must necessarily have been known to one of them, and the knowledge of one was the knowledge of all. This is a very just and reasonable principle, for although *Joseph Jackson* is alone sued on the bill, yet, as has been already observed, it must be deemed a partnership transaction ; and a knowledge by one of the firm of the dishonour of the bill, was all that ought to be required.

Judgment for the plaintiffs.