# Taylor *against* Young.

The indorsee of a bill of exchange, drawn upon a partnership in favour of one of its members by a former partner, who had recently withdrawn, but whose withdrawal was not known to the indorsee, is not excused from giving notice to the drawer of the dishonour of the bill.

Notice of the dissolution of a partnership is necessary where the outgoing partner holds himself out to the world as the representative of the firm, or attempts to bind it, but not where he acts professedly and exclusively for himself.

Where a bill of exchange is made payable at no particular time, it is payable immediately; and to charge a drawer or indorser, it must be presented for payment in a reasonable time after the receipt of it.

Where the holder of a bill, payable immediately, has taken it from the payee,

(*a*)   See also Barton *v.* Cook, 5 *Ves.* 461; Norris *v.* Harrison, 2 *Madd.* 280 ; and Choat *v.* Yeates, 2 *Jacob & W.* 102.

[Taylor v. Young.]

not in the usual course of business, but long after the reasonable and proper time for the presentment of it, he must abide by the case of the payee, and is affected with notice of all the facts of which the payee was conusant at the time of the transfer of the bill,

A and B, together with others, were partners. A withdrew from the firm, and published a notice of his withdrawal in a newspaper. Two weeks afterwards he drew a bill of exchange upon the firm in favour of B. No time of payment was mentioned in the bill. Six days after receiving the bill, B withdrew from the firm, and notice thereof was published in a newspaper. Between six and seven months after his withdrawal, and after he had failed in business, he indorsed the bill to C, by whom it was, for the first time, presented to the drawees for payment; which being refused, a suit was brought against the drawer, and it was held that the plaintiff could not recover.

WRIT of error to the court of common pleas of *Alleghany* county. This suit was instituted by Samuel Young against Thomas Taylor and James Taylor, composing the firm of James Taylor & Co., the plaintiffs in error, to recover the amount of the following draft, or order, of which Young was the holder.

" $169 20.                             Pittsburgh, August 27th, 1825.

" Pittsburgh Iron Manufacturing Company,

" Please pay to Samuel K. Page & Co., or order, 169 dollars 20 cents for value received, which charge to account of

                                    , " Yours,

                              . " JAMES TAYLOR & Co."

Indorsed—" Samuel K. Page & Co."

By an article of agreement, dated the 15th of January 1825, a partnership was formed between Samuel K. Page and James Taylor & Co. of the one part, and the Pittsburgh Iron Manufacturing Company of the other part, for the purpose of carrying on the business of the latter company. On the 12th of August 1825, James Taylor & Co. published a dissolution of their connection with the Pittsburgh Iron Manufacturing Company in the Pittsburgh Gazette, to which Young was at the time a subscriber. On the 2d of September 1825, Page published a notice of his retirement from the some company. On the 25th of March 1826 there was a dissolution of a partnership between Samuel K. Page and James P. Stuart ; and on the 28th of the same month the failure of Page became known. At this period, and for some time after the failure of Page, who was indebted to Young, Young was absent. After his return he received an assignment of the order from Page, and presented it for payment to the agent of the Pittsburgh Iron Manufacturing Company, by whom payment was refused. It was not proved on the trial that notice of the presentment and non payment had been given to the drawers previous to the institution of suit. The *præcipe* for the suit was dated the 9th of May 1826. Previous to the date of the order there had been dealings between Young, as a member of the firm of George Young & Co., and the Pittsburgh Iron Manufacturing Company. At the time the order was drawn, and for some months after, the drawers had funds in the hands of the last named company.

[Taylor v. Young.]

On behalf of the plaintiff below the following points were submitted to the court.

1. That the fact as proved, that James Taylor & Co. were, at the time of giving the order, partners in the firm upon which it was drawn, is sufficient and a waiver of all additional notice of non acceptance or non payment by, or presentation to, the drawees.

2. That sufficient evidence has been given, of previous dealings between the parties, to have rendered it necessary on the part of the defendants to show actual knowledge of the holder of the bill (the plaintiff), of the dissolution of the Pittsburgh Iron Manufacturing Company : and that an advertisement in the gazette was not sufficient notice to the plaintiff.

The counsel of the defendants below submitted the following points.

1. The plaintiff has not proved a presentation to the drawees, of the order on which this suit is founded, in due and reasonable time, and is therefore not entitled to recover.

2. No notice to the drawers of the presentation and non payment of the draft in question has been proved, and the plaintiff is therefore not entitled to recover.

3. The failure to present for payment the draft in question to the drawees until the 28th of March 1826, is such negligence as takes away all legal right from the plaintiff to recover in this case.

In the charge of the court below, the cause was regarded as turning on the point, whether notice, either actual or presumptive, of the dissolution of the partnership between the drawers and the Pittsburgh Iron Manufacturing Company, had been brought home to the holder, Young, at the time he received the order. The court viewed the drawers and drawees as being, at the date of the order, in fact partners, in reference to Young : and, considering the order as purporting to be drawn by a member of the firm on the firm itself, and in the light of a promissory note, decided, that although there was great delay in presenting it to the drawees for payment, it was not binding on Young to give to the drawers notice of the presentation and non payment. As regarded Page, in whose favour the order was drawn, there was a dissolution of the partnership at the date of the order, of which he was affected with notice. But the notice which Page had, did not extend to, or affect Young. As there had been previous dealings between Young and the Pittsburgh Iron Manufacturing Company, the notice published in the gazette was, as to him, not sufficient. Whether this notice, combined with public notoriety on the subject, formed sufficient grounds for inferring that he had a knowledge of the dissolution, was for the jury to determine. If he had that knowledge, no matter in what manner acquired, at the time he received an assignment of the order, he could not recover. The remote period after the order was drawn, at which it was transferred to him, and then not until after Page's failure, was a circumstance that should have put him upon inquiry ; and with reasonable prudence

[Taylor v. Young.]

he might have ascertained the fact of the dissolution of partnership before the order was drawn. If he had no knowledge of that fact at the time of the transfer, he was entitled to recover.

The following errors were assigned.

1. The court erred in their answers to the first, second and third points submitted by the counsel of the defendants below.

2. The court erred in charging the jury that the notice of the dissolution of the partnership between the defendants below and the other members of the Pittsburgh Iron Manufacturing Company, which Page had, was not extended to Young.

3. General errors.

*Burke* and *Fetterman*, for plaintiffs in error.

There was no pretence of the existence of a partnership, as between the drawers and drawees themselves, at the time the order was drawn. The date of the draft was subsequent to the dissolution of partnership. It was dated the 27th of August 1825; and not until the following March was there a presentment. Against that time the firm of Page and Stewart was dissolved, and Page had failed. The Pittsburgh Iron Manufacturing Company had also failed. Page himself then could not recover; and passing the draft into Young's hands would not enable Young to recover. The draft was not presented in a reasonable time. *Chitty on Bills* 315—345; Brower *v.* Jones, 3 *Johns. Rep.* 230; Rickford and others *v.* Ridge, 2 *Camp.* 537. Here there was no notice of presentment and non payment given to the drawers; and the draft being drawn after a dissolution of partnership, those out of the firm could not have been charged by an acceptance. 1 *Stark. Ev.* 375; Wrightson et al. *v.* Pullan et al., 2 *Com. Law Rep.* 433; Bank of South Carolina *v.* Humphreys et al., 1 *M'Cord* 388. Nor was it important whether Young had or had not notice of the dissolution. He took the draft after the lapse of more than three months from its date. The firm were not on the draft. He was bound to due diligence, and was liable for his own ignorance if he failed to ascertain the fact of the dissolution. Where mercantile paper is drawn upon a firm after a dissolution by one of its members, and another member accepts, an advertisement in the gazette is sufficient notice of dissolution to all the world. Wrightson et al. *v.* Pullan et al., 2 *Com. Law Rep.* 434; Wright and others *v.* Pulham, 18 *Com. Law Rep.* 271, 2 *Chitty's Rep.* 121.

*Dallas*, for defendant in error.

This suit was instituted as early as 1826 or 1827. There were two trials in the court below, both resulting in favour of the defendant in error. The first verdict of the jury was set aside by the court, on the single ground that the jury had disregarded the opinion of the court, in stating to them that the notice of the dissolution of the partnership of the Pittsburgh Iron Manufacturing Company bound the plaintiff, in as much as no proof was offered of previous dealings

between the plaintiff below and the Pittsburgh Iron Manufacturing Company. On the second trial, the evidence of previous dealings was given, and the court then refused to disturb the verdict.

The order, on the face of it, is payable at sight, or on demand. Therefore it was not necessary to show any acceptance, or notice of non acceptance by drawers, or any presentment. *Chitty on Bills* 175, *in note; Ibid.* 212, *t. p.* In Pennsylvania what constitutes reasonable notice is matter of fact for the jury to determine. Robertson et al. *v.* Vogle, 1 *Dall.* 255; Mallory *v.* Kiswan, 2 *Dall.* 192; Warder et al. *v.* Carson's Executors, 2 *Dall.* 233; Warder et al. *v.* Carson's Executors, 1 *Yeates* 531; Bank of North America *v.* Wycoff, 4 *Dall.* 151. In New York, this question of reasonable notice, seems to have been considered a mixed question of law and fact. Taylor *v.* Bryden, 8 *Johns.* 173. So in Massachusetts. Field *v.* Nickerson, 13 *Mass. Rep.* 131.

The drawers here were partners of the drawees—drawers drawing upon themselves. Under such circumstances, will it be contended that any notice is necessary? What is the reason why the law in certain cases requires notice? That the drawer may know whether he has effects in the hands of the drawee to answer the bill. Hoffman and Seton *v.* Smith, 1 *Caines's Rep.* 157; Tunno and Cox *v.* Lague, 2 *Johns. Ca.* 1; 1 *Bay's Rep.* 291; Warder et al. *v.* Tucker, 7 *Mass. Rep.* 449. But where the drawer must have, or be presumed to have, full knowledge as to the fate of the bill, such notice need not be given. *Chitty on Bills* 221—224, *t. p.*; Porthouse *v.* Parker et al. 1 *Camp. Rep.* 82; Gowen *v.* Jackson, 20 *Johns.* 176; Juniata Bank *v.* Hale et al. 16 *Serg. & Rawle* 161. Then as to the notice of the dissolution of the Pittsburgh Iron Manufacturing Company, Taylor & Co. published their withdrawal on the 2d September 1825, in the Pittsburgh Gazette. If Samuel Young is to be affected by notice of that kind, it can only be from that date; and that was after the order was given. But the notice here set up is not sufficient in a case where previous dealings between the parties were shown. There must be actual notice. Gorham et al. *v.* Thompson et al., *Peake's N. P.* 42; Graham et al. *v.* Hope et al., *Ibid.* 154; Godfrey et al. *v.* Macauley, 1 *Esp. N. P.* 371; *Watts on Part.* 160, 284; *Roscoe on Bills* 68; 1 *Montague on Part.* 37, *in note*; Fox et al. *v.* Hanbury et al., *Cowp.* 449; Williams et al. *v.* Keats and Archer, 3 *Com. Law Rep.* 352; Graves et al. *v.* Merry and Gilbert, 6 *Cowen* 701; Shaffer and another *v.* Snyder, 7 *Serg. & Rawle* 503.

The opinion of the Court was delivered by

GIBSON, C. J.—A draught or bill made payable at no particular time, is payable immediately; and to charge the drawer or an indorser, it must be presented for payment in a reasonable time after the receipt of it. In this case the draught was held back for nearly eight months; a length of time which, in ordinary cases, is out of all reason. It is argued, however, that as regards the holder, the drawers

are to be considered as a partner firm of the house on which the bill was drawn; and that presentment or notice was unnecessary, on the principle of Northouse *v.* Parker, 1 *Camp.* 82, in which notice was ruled to be superfluous where the bill is drawn by several on one of themselves; since the acceptor, being likewise a drawer, is necessarily apprized of the material facts, and the knowledge of one partner is the knowledge of all; the converse of which was determined in Gowen *v.* Jackson, 20 *Johns. Rep.* 178, and would be our case if the drawer here had been a member of the general firm when the bill was drawn. But the fact is, it had retired. Notice of its retirement was published in the Pittsburgh Gazette on the 12th of August, and the bill was drawn on the 27th. To this, it is said, the fact of withdrawal may not have been known to the holder when he took the bill. But of what importance is his ignorance? It is said he may have been induced to omit the presentation of it and notice of non payment, by a belief that a continuance of the relation in which the parties once avowedly stood, had rendered such a measure unnecessary. Would a reasonable belief, founded on a notorious course of dealing between the parties, that the drawer had not funds in the hands of the drawee, be equivalent to the actual fact, and operate a dispensation from the duty of presentment and notice? Of collateral facts like these, the party must judge at his peril. In analogy to the revocation of an agent's authority, notice of the dissolution of a partnership is necessary where the outgoing partner holds himself out to the world as the representative of the firm, and attempts to bind it; but not where he acts professedly and exclusively for himself. In respect to the first, the firm is bound for a supineness which, in trade, is equivalent to fraud, in not apprizing the public of the cessation of a relation which enabled each partner to contract for the whole. But in a transaction where the outgoing partner professed to treat not for the firm, but himself, it is not easy to perceive how the misconception of a fact that did not enter into the terms of the contract, can dispense with any of its incidents, or give the party dealing with him an advantage against him. But if that were otherwise, the holder having taken the bill, not in the usual course of business, but long after the reasonable and proper time for the presentment of it, must abide by the case of the payee, who was actually a partner when it was drawn, and who therefore knew that the drawer had ceased to be so. It would seem, therefore, that the cause was put on an immaterial point, and that the plaintiff was not entitled to recover.

Judgment reversed, and a *venire de novo* awarded.