### JAMES FULLER & another *vs.* ROBERT HOOPER & others.

A bill of exchange, stamped in the margin " Pompton Iron Works," and concluding thus: " Which place to account of Pompton Iron Works, W. Burtt, agent," purports to be the bill of the Pompton Iron Works, and is binding on the person carrying on the manufacture of iron in that name, if Burtt was his authorized agent.

Notice of the non-acceptance and non-payment of a bill of exchange drawn by a partner upon his partnership need not be given to the drawer, after all the partners have gone into insolvency.

Allowance of proof in insolvency against the estate of a partnership, of a bill of exchange drawn upon them by one of the partners, will not prevent its subsequent proof, before any part of it has been paid, against the separate estate of that partner.

APPEAL from a decree of the master in chancery in the matter of the estate of Horace Gray & Nathaniel Francis, insolvent

debtors, of whom the appellees were the assignees. The par-
ties submitted the case to the court upon a statement of facts,
the material part of which was as follows :

Horace Gray and Nathaniel Francis, from the year 1844 until
the 24th of November 1847, when they petitioned for the benefit
of the insolvent laws, were partners in Boston, under the firm
of Horace Gray & Co. Their principal business during this
time was to make purchases of coal, pig iron and other materials
for the purpose of supplying, and to sell the iron manufactured
at, various iron works, in all which works neither the partnership
nor Francis had any interest. Gray individually was the lessee
of two of these establishments, known as " The Pompton Iron
Works," at Pompton, in the State of New Jersey, and " The
Ulster Iron Works," at Saugerties, in the county of Ulster and
State of New York, where, from 1844 till the insolvency afore-
said, he carried on the manufacture of iron. William Burtt was
employed by Gray, as the general agent and superintendent of
the Pompton Iron Works, and was paid by Gray an annual
salary, and had no interest in the manufacture. Gray author-
ized Burtt, as agent of the Pompton Works, among other
things, to contract for all machinery and materials required in
the manufacture of iron, and to give drafts on Horace Gray
& Co. for the expenses so incurred. And Horace Gray &
Co. authorized Burtt, as agent of the Pompton Iron Works,
to draw on them for such expenses, and promised to accept
such drafts. Burtt resided at Saugerties, visiting Pompton
when necessary.

The appellants delivered certain castings ordered by said agent,
within the scope of his authority, for the use of the Pompton
Iron Works, at said works, at the following dates : November
16th 1846; January 14th 1847; May 19th 1847; June 29th
1847; August 25th 1847; November 17th 1847; and the cast-
ings so delivered were used in the ordinary business of said
works. For the amount of each delivery, Burtt gave a draft, of
the same date, on Horace Gray & Co., who duly accepted the
first five of said drafts before their insolvency, and charged
the acceptances thereof in their books, with the knowledge

and consent of Gray, to "Horace Gray, Lessee of Pompton Iron Works." And the first four drafts were paid at maturity. These six drafts, as well as all or most other drafts given for expenses incurred at the Pompton Iron Works in behalf of Gray, were precisely alike in form; and this form of draft was not used for any other purpose. The following is a copy of one of the drafts:

POMPTON IRON WORKS.

$450.00.                    Saugerties, Nov'r 17th 1847.

Four months after date, pay to the order of Messrs. James Fuller & Co. four hundred & fifty dollars, value received, which place to account of Pompton Iron Wks

W. Burtt, Agt

To Messrs. Horace Gray & Co. }
          Boston, Mass'tts.        }

Payment of the draft dated August 25th 1847 was duly demanded of the acceptors, and refused, and the draft duly protested, and notice thereof given to W. Burtt, agent. The draft dated November 17th 1847 was duly presented at maturity, at the place of business of the acceptors, and acceptance and payment thereof refused.

The appellants presented these two drafts for proof before the master, claiming to prove them against both the separate estate of Horace Gray and the joint estate of Horace Gray & Co.; and also offered, in case the drafts should not be allowed against said separate estate, to surrender the drafts, and prove the consideration thereof against the separate estate of Horace Gray. The master allowed the drafts against the estate of Horace Gray & Co.; but decreed that neither the drafts, nor the consideration thereof, could be proved as a debt against the separate estate of Horace Gray.

If the court shall be of opinion, upon such of the facts above stated as would be admissible in evidence, that these drafts bound Horace Gray, a decree is to be entered, allowing them to be proved against his separate estate, as well as against the partnership estate, and for costs. If they did not so bind him, but the appellants are entitled to prove the consideration of the drafts against his estate, a decree is to be entered accordingly,

and for costs. But if they are entitled to prove neither the drafts nor the consideration thereof against the separate estate of Horace Gray, then the decree of the master is to be affirmed, with costs for the respondents.

*H. Gray, Jr.* for the appellants. I. (1.) He, in whose behalf a parol contract, whether oral or written, is in fact made, though in the name of an agent, may sue or be sued upon it, unless it clearly appears that the other party, knowing the facts, gave credit to, or dealt with, the agent exclusively. And it makes no difference, in this respect, whether or not the agent might sue or be sued on the contract. Oral evidence is always admissible to charge the principal, though not to discharge the agent. Story on Agency, §§ 160 *a*, 161, 162, 270, 446, 446 *a*. 2 Kent Com. (6th ed.) 631 *& note.* 2 Smith's Lead. Cas. 224. *Wilson* v. *Hart,* 7 Taunt. 295, 304, and 1 Moore, 45, 50. *Jones* v. *Little-dale,* 6 Ad. & El. 490, and 1 Nev. & P. 679. *Trueman* v. *Loder,* 11 Ad. & El. 594, 595, and 3 P. & Dav. 271. *Higgins* v. *Senior,* 8 M. & W. 844. *Hopkins* v. *Lacouture,* 4 Miller, 66. *Hunting-ton* v. *Knox,* 7 Cush. 374, 375. *Salmon Falls Manuf. Co.* v. *Goddard,* 14 How. 454, 455. There is no reason why a negotiable bill or note should be less available against the real party, than any other simple contract. Therefore a husband has been held liable on the acceptance of his wife, *Lindus* v. *Bradwell,* 5 C. B. 583 ; a corporation on the note of their general agents, *Melledge* v. *Boston Iron Co.* 5 Cush. 174–178 ; a partnership on the acceptance of one partner, *Bank of Rochester* v. *Monteath,* 1 Denio, 405 ; and an individual on the draft of his agent, which he had recognized, *Shiras* v. *Morris,* 8 Cow. 60. It can make no difference whether the signature of the agent has been used and adopted by the principal for all similar transactions, (of which, however, there is some evidence in this case,) or expressly ratified by the principal, or the consideration received by him, in the particular instance. Even if parol evidence should be held inadmissible to charge the principal on the negotiable instrument of the agent, in the hands of an indorsee, on the ground of a want of privity of contract ; still the mere fact of the instrument's being negotiable in form should not deprive the

original payee of the remedies which he might have against the principal, if the instrument were not negotiable.

(2.) A principal is liable on a bill or note made by his agent, when the name of the principal appears on its face, on proving by parol the agent's authority, or a ratification by the principal, and that the proceeds were applied to his use; although the agent's name be so signed as would render him personally liable on the bill or note, if he had no authority to make it on behalf of the principal. *New England Marine Ins. Co.* v. *De Wolf*, 8 Pick. 61, 62. *Rice* v. *Gove*, 22 Pick. 158. *Mann* v. *Chandler*, 9 Mass. 335. *Northampton Bank* v. *Pepoon*, 11 Mass. 292. *Odiorne* v. *Maxcy*, 13 Mass. 182. *Despatch Line of Packets* v. *Bellamy Manuf. Co.* 12 N. H. 229. *Brockway* v. *Allen*, 17 Wend. 40. *Johnson* v. *Smith*, 21 Conn. 627. *Mechanics' Bank of Alexandria* v. *Bank of Columbia*, 5 Wheat. 337.

(3.) These drafts appear on their face to be the drafts of the Pompton Iron Works, and not of Burtt. They are drawn in the form prepared exclusively for the use of these works; and conclude with the name of the principal (to whose account they are directed to be charged) followed by the name of the agent and a description of the capacity in which he acts. *Mechanics' Bank of Alexandria* v. *Bank of Columbia*, 5 Wheat. 327, 337. *Van Reimsdyk* v. *Kane*, 1 Gallis. 632, 639, 640, and 9 Cranch, 162. *Emerson* v. *Providence Hat Manuf. Co.* 12 Mass. 240. *Witte* v. *Derby Fishing Co.* 2 Conn. 260. *Rathbon* v. *Budlong*, 15 Johns. 1. *Safford* v. *Wyckoff*, 1 Hill (N. Y.) 13, 14, and 4 Hill, 452. *Andrews* v. *Estes*, 2 Fairf. 267. And parol evidence is admissible to show that " Pompton Iron Works " means Horace Gray. *Herring* v. *Boston Iron Co.* 1 Gray, 134.

II. If the drafts themselves cannot be proved against the separate estate of Horace Gray, the plaintiffs, on surrendering the drafts, may prove their original account for the castings delivered to and used by Gray at his works at Pompton. *Alcock* v. *Hopkins*, 6 Cush. 484. *Zerrano* v. *Wilson*, 8 Cush. 424. *Episcopal Charitable Society* v. *Episcopal Church in Dedham*, 1 Pick. 375. *Pentz* v. *Stanton*, 10 Wend. 271. *Allen* v. *Coit*, 6 Hill, 318. Story on Notes, §§ 104, 404, 438. *French* v. *Price*, 24 Pick. 21.

III. No protest of the November draft, or notice to Horace Gray of the non-acceptance and non-payment thereof by Horace Gray & Co., all of whom were in insolvency under the same commission, was necessary. *Porthouse* v. *Parker*, 1 Campb. 82. *Rhett* v. *Poe*, 2 How. 479.

*S. Bartlett & C. B. Goodrich*, for the appellees. I. A written contract binds only the party in whose name it is executed, and oral evidence is inadmissible to vary it, by charging another person on the contract, unless the real principal was unknown when the contract was made. Especially is this the case with negotiable promissory notes and bills of exchange, each person receiving which makes a contract with the parties upon the face of the paper, and with no other party. *Stackpole* v. *Arnold*, 11 Mass. 27. *Finney* v. *Bedford Commercial Ins. Co.* 8 Met. 348. *Bedford Commercial Ins. Co.* v. *Covell*, 8 Met. 442. *Taber* v. *Cannon*, 8 Met. 456. *Shaw* v. *Stone*, 1 Cush. 228. *Fenly* v. *Stewart*, 5 Sandf. 101. *Minard* v. *Mead*, 7 Wend. 68. *Newcomb* v. *Clark*, 1 Denio, 226. *Beckham* v. *Drake*, 9 M. & W. 92, 96 Byles on Bills, (5th ed.) 26, 342. 1 Amer. Lead. Cas. (1st ed.) 454. Addison on Con. 262, 375.

These bills on their face purport to be drawn by W. Burtt. The addition of "agent" is mere *descriptio personæ*. *Packard* v. *Nye*, 2 Met. 47. *Bradlee* v. *Boston Glass Manufactory*, 16 Pick. 347. *Hills* v. *Bannister*, 8 Cow. 31. The direction to charge the amount of the bill to the account of a party named is in usual mercantile form, and inserted merely for the information of the drawees, and does not show, on the face of the bill, that that party is the drawer; but, on the contrary, leaves the agent who draws it personally responsible. *Mayhew* v. *Prince*, 11 Mass. 54. Nor can the insertion of the words in the margin have any greater effect.

II. The drafts received by the appellants at the time of the sale and delivery of the goods, were received in payment; and they cannot therefore resort to the consideration as a basis of proof against any party. *Paige* v. *Stone*, 10 Met. 160. *French* v. *Price*, 24 Pick. 13. *Wiseman* v. *Lyman*, 7 Mass. 286. *Ilsley* v. *Jewett*, 2 Met. 173. *Cole* v. *Sackett*, 1 Hill. (N. Y.

*Waydell* v. *Luer*, 3 Denio, 410. *Ex parte Blackburn*, 10 Ves. 206. After the insolvency of Gray & Co., and after the maturity and dishonor of the bills, the appellants retained them as subsisting securities, and cannot now resort to the consideration.

III. The insolvency of Gray & Co. furnished no excuse for the failure to protest the August draft. Owen on Bankr. 167.

IV. If the appellants had the liability of Gray as drawer, and also that of Gray & Co. as acceptors, they cannot prove the same debt or bill against both estates, but must elect. Archb. Bankr. (9th ed.) 445. Mont. Bankr. Laws, (3d. ed.) 234. *Ex parte Bevan*, 9 Ves. 223, and 10 Ves. 107. *Ex parte Hay*, 15 Ves. 4. *Ex parte Rowlandson*, 3 P. W. 405. *Ex parte Husbands*, 2 Glyn & J. 4.

*Gray*, in reply. The propriety of the allowance of these drafts against the partnership estate is not open upon this appeal and statement of facts. If it were, the English authorities, cited by the appellees, recognize the right to double proof in the case of a bill drawn on the partnership, for the private business of one partner. And in this country double proof has been allowed in all cases. *In re Farnum*, 6 Law Reporter, 21. *Sohier* v. *Loring*, 6 Cush. 548. *Somerset Potters Works* v *Minot*, 10 Cush. 596, 597.

METCALF, J. The appeal in this case brings before us the single question, whether the two drafts of August and November 1847 can be legally proved against the separate estate of H. Gray. The main objection which is made to their being so proved is, that it does not appear, on the face of them, that he is individually a party to them, and that parol evidence is not admissible to prove that he is. But we deem it clear, upon the face of the drafts, that they purport to be drawn by the Pompton Iron Works, through the agency, authorized or unauthorized, of W. Burtt. And it appears, from the facts agreed, that Burtt was the agent of those iron works, authorized by H. Gray, and by H. Gray & Co., to make drafts on H. Gray & Co. for expenses incurred for machinery and materials required in the manufacture of iron by those iron works; and, that these drafts were made for expenses so incurred.

We deem it equally clear, that parol evidence would be admissible to show that the Pompton Iron Works were H. Gray and no one else ; and therefore that fact is to be taken as rightfully in the case. *Bryant* v. *Eastman,* 7 Cush. 111. *Melledge* v. *Boston Iron Co.* 5 Cush. 158. *Williamson* v. *Johnson,* 2 Dowl. & Ryl. 281, and 1 B. & C. 146. Collyer on Part. (3d Amer ed.) § 411 *& note.*

The case of *Stackpole* v. *Arnold,* 11 Mass. 27, which was pressed upon us, in argument, is not at all like this. This is a case in which persons make contracts in an artificial name ; and parol evidence is admitted for the purpose of showing who those persons are. That was an action against Arnold, on a note (which the files of the case, though not the report of it, show to have been negotiable) signed by Z. Cook, payable to W. Stackpole ; and the attempt was to show, by parol evidence, that Cook signed the note as agent of Arnold, and bound him, though the agency did not appear on the note. The correctness of the decision by which that evidence was held inadmissible is not to be doubted ; although some of the *dicta* in the opinion there given may not be sustainable. The decision has been repeatedly recognized and affirmed. See *Bedford Commercial Ins. Co.* v. *Covell,* 8 Met. 442, and *Taber* v. *Cannon,* 8 Met. 460. The rule is general, if not universal, that neither the legal liability of an unnamed principal to be sued, nor his legal right to sue, on a negotiable instrument, can be shown by parol evidence. When an agent signs such an instrument, without disclosing his agency on its face, the holder must look to him alone. And when such an instrument, which is intended for the benefit of the principal, is given to the agent only, he only, or his indorsee, can sue on it. In other simple contracts, the rule is different.

Another objection made to the proof, against H. Gray individually, of the last of these drafts, is, that it was not protested, nor was notice given to him of its non-acceptance or non-payment. But as he was one of the drawees, as well as the drawer, and had knowledge of the drawees' default, no further notice to him of non-payment was necessary in order to charge him as drawer. Chit. Bills, (10th Amer. ed.) 450. *Gowan* v.

*Jackson,* 20 Johns. 176. Furthermore; he had no right to expect that the drawees would pay the draft; as they (including himself) had caused all the funds, from which it could be paid, to be intercepted, by going into insolvency. *Rhett* v. *Poe,* 2 How. 457. It was not possible that he could be injured by want of formal notice. *Claridge* v. *Dalton,* 4 M. & S. 232.

We are therefore of opinion that proof of these drafts ought to have been allowed against H. Gray individually, as drawer. Whether they were legally provable against H. Gray & Co., as drawees, is not a question on this appeal. They *were* allowed to be so proved, and no appeal was taken from that allowance. The fact that they have been so proved does not prevent the holders from proving them against the drawer also. *Sohier* v. *Loring,* 6 Cush. 548.