## John T. Wilson v. Osman J. Wilson.

### Gen. No. 4,593.

1. PRACTICE ACT—*section 23 construed.* This section does not give to a defendant an absolute right to interpose further defenses after he has once pleaded.

2. AMENDMENT—*when motion for leave to make, properly denied.* Where a cause for several years has stood at issue, a motion, un-accompanied by a showing as provided by rule of court, to file a plea of the Statute of Limitations after the same has been set for trial, is properly denied.

3. NON-JOINDER—*how advantage of, must be taken.* The non-joinder of a necessary defendant can only be taken advantage of by a plea in abatement unless such non-joinder appears from the plaintiff's own pleading, and the rule is the same notwithstanding joint liability is not claimed to apply to all of the items of the plaintiff's demand.

4. SET-OFF—*when plea of, essential.* A defendant to avail himself of independent items against the plaintiff not arising out of the subject-matter for which the plaintiff sues, must interpose a plea of set-off.

5. SERVICES—*when question as to reasonable value of, immaterial.* The question as to the reasonable value of the services for which suit is brought is immaterial where there appears to have been an express contract fixing the value of such services.

Action of assumpsit. Appeal from the Circuit Court of LaSalle County; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed March 10, 1906.

L. W. BREWER, for appellant.

GEORGE S. WILEY and BROWNE & WILEY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court. Appellee recovered a verdict and a judgment in the court below against appellant, his brother, for $700 for services rendered to appellant in his electric light plant at Earlville. The pleadings were the common counts and the general is-

sue. Under a rule obtained by appellant, appellee filed a bill of particulars, charging for services from December 8, 1896, to November 3, 1897, and from February 12, 1898, to August 12, 1901; but the proofs practically divided the services into three periods. The first period was from December 8, 1896, to November 3, 1897, for which appellee sought to recover what his services were reasonably worth, and offered proof that they were worth $1 per day. The second was from February 12, 1898, to February 6, 1900, at the agreed rate of $1 per day. The third was from February 6, 1900, to August 12, 1901, for which appellee sought to recover what the services were reasonably worth and introduced proof that they were worth $50 per month. As to the first period of service, appellee's proof was as follows: Appellant proposed to appellee to go to work firing in the electric plant and to learn the business; that appellant would buy books and magazines so that he might read up on that work, and that he would direct Saddler, the engineer and electrician in charge of the plant, to instruct appellee in the work. Appellee, who was about 35 years of age and married, replied that he would like it, but he had to live. Appellant said: "I will see that you live." They agreed the wages at the start should be nothing. Appellee went to work for appellant under that arrangement, but Saddler refused to teach him. Appellee then told appellant of that refusal, and that under these circumstances he could not stay upon the terms under which he had gone to work. Appellant told him to stay, and he would make it all right with him, and he did stay and work. He gave a detailed account of the different services he regularly performed in connection with the plant. If there was such a second arrangement made, it entitled appellee to receive what his services were reasonably worth. Appellant testified that the first contract was that appellee should work a year for him for nothing while learning the business, and that after the first year he was to have $1 per day, and that when he was able to run the plant appellant would raise his wages and put him in charge of the plant and let Saddler go.

Appellant denied that appellee told him Saddler would not instruct him and that they then made a different arrangement. They both testified appellee quit the work November 3, 1897; that he went to work again for appellant on February 12, 1898, at the agreed wages of $1 per day and so continued till February 6, 1900, when Saddler left. That was the second period. As to the third period appellee testified that when Saddler left appellant asked appellee if he thought he could run the plant; that he replied that he knew he could; that appellant said if he could he would give him as much as any other man; that he immediately took charge, and operated the plant till August 13, 1901, when he quit. He introduced proof that his services during that period were worth $50 per month. Appellant testified that the contract then made was that he would raise his wages $5 per month each year till he got the same wages Saddler had received, provided he proved competent to take charge of the plant. Appellant introduced proof that appellee was not competent to run the plant, and did not run it alone, and that his services during the third period were worth $30 to $35 per month. In this conflict of testimony the jury decided for appellee and the trial judge approved their verdict. This was purely a matter of fact, and we cannot say they should have found the other way.

Appellant contends that the court erred in refusing him leave to file a plea of the Statute of Limitations. The summons was served and declaration filed January 5, 1903. On January 22, 1903, appellee filed his specific bill of particulars in compliance with the rule obtained by appellant. Appellant filed the general issue the next day. On February 23, 1905, the cause was set to be tried on March 6th. On March 3rd, appellant served notice on appellee that on March 6th he would ask leave to file two additional pleas. On March 6th appellant presented and asked leave to file a plea of the Statute of Limitations. There was then in force the following rule of court: "No cause shall be set for a particular day till at issue, and no change in pleadings will be allowed after a cause is set, unless good cause is shown

by affidavit." No cause was shown. The court denied the motion and entered upon the trial. Section 23 of the Practice Act allows amendments in any pleading at any time before judgment on such terms as shall be just and reasonable, and this provision has been liberally construed, but it does not give a defendant an absolute right to interpose further defenses after he has once pleaded, nor does it compel the court to grant leave to file new pleas upon a mere motion. Where a defendant asks leave to file a further plea setting up an entirely new defense, especially if a long time has passed since his original plea was filed and the case is about to be reached for trial, he must support his application by showing diligence and some reasonable excuse for not having sooner presented his defense. Dow v. Blake, 148 Ill., 76; Phenix Ins. Co. v. Stocks, 149 Ill., 319; Dulle v. Lally, 167 Ill., 485; Phenix Ins. Co. v. Caldwell, 187 Ill., 73; City of Chicago v. Cook, 204 Ill., 373. There is nothing to show that appellant could not have filed this plea with the general issue over twenty-five months before. The object of a bill of particulars is to inform the defendant of the claim he is called upon to defend against, and to restrict the plaintiff, on the trial, to proof of the particular matters therein stated. McDonald v. People, 126 Ill., 150; Waidner v. Pauly, 141 Ill., 442. The specific bill of particulars here filed furnished appellant full information as to the periods of time during which appellee claimed he rendered the service for which he sought compensation in this suit. To grant such an application to file an additional plea at the time fixed for trial is either to compel the plaintiff to go to trial at a disadvantage and without the previous information as to the defenses to be interposed and preparation therefor to which he is fairly entitled, or else to force him to a continuance when he is ready for trial on all issues previously presented. This should not be permitted unless a good reason for the delay is shown. No error was committed in refusing leave to file this plea.

The court refused to permit appellant to prove that during part of said first period of service Frank A. Wiley and

appellant jointly owned and operated the plant.    The rule at common law is that if a person be omitted as defendant who ought to be joined in an action on a contract, advantage of the omission can only be taken by a plea in abatement, unless the joint liability appears from plaintiff's own pleading.    1 Chitty's Pl., 46; 1 Saunder's Pl. & Ev., 10; Rev. Stat. chap. 1, sec. 4; Conley v. Good, Breese, 135; Lurton v. Gilliam, 1 Scam., 577; Puschel v. Hoover, 16 Ill., 340; Thompson v. Strain, 16 Ill., 369; Pearce v. Pearce, 67 Ill., 207; Ross v. Allen, 67 Ill., 317; Sinsheimer v. William Skinner Mfg. Co., 165 Ill., 116.    Proof that another is liable with defendant does not tend to show that defendant is not liable, and hence does not tend to establish the general issue.    The fact that the joint liability is not claimed to cover all the items of plaintiff's demand, does not abrogate the rule requiring that defense to be set up by a preliminary plea which gives the plaintiff a better writ, if he choose to avail of it.    As defendant did not plead this defense in abatement, this proof was properly rejected.

Appellant sought to prove debts which appellee owed him prior to making this first contract for employment, and which therefore could not have been intended as payment for the services here sued for.    A defendant cannot avail of independent demands he has against the plaintiff, not arising out of the subject-matter for which plaintiff sues, unless he has filed a plea of set-off or given notice thereof under the general issue or under a plea of payment.    Rev. Stat., chap. 110, sec. 29; Cox v. Jordan, 86 Ill., 560.    Appellant had not filed such a plea or given such notice, and this proof was therefore properly rejected.    Appellee in his bill of particulars gave appellant credits for cash and other matters amounting to a large sum.    The court also ruled generally that appellant might show any money or property that had been paid or given or turned over by appellant to appellee after appellee began working for appellant.    It is argued the court violated this ruling as to one item of proof. Appellant kept a meat market during the early part of appellee's employment, and proved by Herman Kline, an em-

ploye in the market, that there was a charge for meat against appellee on the account book kept in the market. Appellant asked Kline to read the items to the jury. Various objections were made by appellee, including the objection that no foundation had been laid. No effort was made to show that the entries in the book were true and correct, nor that the witness remembered this particular transaction, nor that the date of the entry was during the time appellee was in the employ of appellant; and the entries themselves were not offered so that they could be inspected by opposite counsel. The court did not err in refusing to permit the witness to read to the jury from the book items which had not been admitted or even offered in evidence, nor shown to be competent.

Appellant claims that the court erred in refusing to permit him to prove by the witness William Gibbler the value of appellee's services from February 13, 1898, to February 6, 1900. This was the period during which he was working under an express contract that he should receive $1 per day, as both parties testified. As there was an express contract, the reasonable value of the services was immaterial. The court sustained the objection for that reason. John Harkness had testified for plaintiff before the terms of the employment had been shown, and he seems to have been examined as to the value of appellee's services during the same period, and fixed it at $1.50 per day. The court was not then advised that it would be shown that that period was covered by a special contract fixing the wages. When that fact did appear no motion was made to exclude the answer of Harkness. Appellee ought not to have asked that question, in view of the proof he was to introduce, but it cannot be said the court erred in allowing Harkness to make that answer, as the case then stood; and that answer furnished no ground for admitting other incompetent evidence on the same subject after its incompetency became apparent. The twelfth instruction, given at appellant's request, practically told the jury to allow appellee but $1 per day for the period covered by that special contract, and we conclude ap-

pellant could not have been harmed by the evidence of Harkness.

Appellee's instruction number one was held correct under a like condition of the pleadings in Pearce v. Pearce, *supra,* and number two was of like tenor. Number three did not submit the construction of a contract to the jury. Numbers fifteen and sixteen, requested by appellant and refused, practically directed a verdict for appellant as to the first period of service, ignoring the proof that Saddler refused to instruct appellee and that that led to a new agreement by which appellee was to stay and work and appellant was to make it all right. Number seventeen was incorrect because no plea in abatement had been filed. Number eighteen was incorrect because it directed a verdict for appellant if appellee's services were worth no more than he had already been paid therefor, which was not the rule applicable to the second period of service when there was an agreement to pay a fixed sum per day. The court did not err in refusing said instructions.

We find no reversible error in the record. The judgment is affirmed.

*Affirmed.*