**Benjamin E. Page, Appellee, v. W. F. Hallam & Company and W. F. Hallam, Appellants.**

**Gen. No. 24,263.**

1. BILLS AND NOTES, § 460*—*when knowledge of and participation in fraud of indorser by indorsee is question for jury.* Evidence *held* to present a question for the jury as to whether an indorsee of notes before maturity had knowledge of and participated in the fraud of the indorser in procurance of signatures of prior indorsers to notes made payable to the maker, a corporation, and indorsed by the corporation and the majority stockholder thereof.

2. BILLS AND NOTES, § 448*—*what not proof that indorsee of notes before maturity knew of intention of stockholder of indorser to convert proceeds of notes.* That an indorsee of notes before maturity knew that the majority stockholder of a corporation, which was the indorser of the notes, was endeavoring to procure an advertising contract from the maker and agreed to take over the

notes before the contract was executed, is not proof that he knew of the intention of such majority stockholder to convert the proceeds from the sale of the notes to his own use.

3. BILLS AND NOTES, § 255*—*when fraud of majority stockholder of corporation indorser does not defeat title of indorsee before maturity*. Even though a corporation indorser of a note had no legal existence at the time notes were executed by another corporation in part payment of a contract for advertising, and the owner of the business of the corporation indorser merely used the corporate name to further his fraudulent enterprises, the title of an indorsee of the notes before maturity cannot be defeated where he was not a party to and did not profit by the misconduct of such owner and had no knowledge of the facts.

4. FRAUD, § 67*—*what insufficient to charge person with knowledge of*. Mere suspicion that one is a party to or has knowledge of a fraud is not enough to charge him with knowledge of the fraud; some evidence must be presented which would authorize a finding against one charged with such knowledge of or participation in fraudulent conduct.

5. BILLS AND NOTES, § 255*—*what will not defeat title of indorsee before maturity for value*. Only bad faith will defeat the title of the indorsee of commercial paper taken before maturity, for value, without knowledge of any defense thereto; and mere suspicion, the knowledge of circumstances calculated to excite suspicion, or even gross negligence of the indorsee in acquiring the paper, will not defeat his title.

6. PLEADING, § 74a*—*when special plea excluded as filed too late*. The trial court, in the exercise of a sound judicial discretion, has the right to exclude a special plea, where it appears that a long period of time has elapsed between the date of the bringing of the suit and the offer of the plea, and where the offer of the plea is unaccompanied by any statement explaining or excusing the delay.

7. PLEADING, § 74a*—*what should be made subject of special plea at time of making of defense to note*. If the indorsers and the maker of notes, defendants in an action on such notes by an indorsee before maturity, knew of the alleged fact in a special plea that the notes were accepted as collateral security for an indebtedness at the time the suit was brought, such fact should have been pleaded at the time of making the defense.

8. PLEADING, § 74a*—*how defendants must show that they had no knowledge of defense at time of filing general issue and special pleas*. If defendants in an action did not know of the facts alleged in a special plea, tendered nearly 4 years after the filing of several special pleas, in addition to the general issue, until the filing of a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

motion for leave to file such special plea, such fact should have been shown by affidavit or otherwise.

9. COURTS, § 150*—*when decision of Supreme Court binding on Appellate Court.* The decision of the Supreme Court on a particular point is binding on the Appellate Court in a case in which the same question is· raised.

10. BILLS AND NOTES, § 259*—*when indorser estopped to claim want or failure of consideration.* An indorser of negotiable paper, having given it the sanction of his own name, will not be permitted, by his own testimony, to show want or failure of consideration for it, where the note is in the hands of an innocent purchaser for value, who has received it in due course.

11. APPEAL AND ERROR, § 1491*—*when exclusion of evidence in action on notes is harmless error.* Reversible error was not committed, in an action by an innocent purchaser for value before maturity, on notes signed by a corporation as maker and indorsed by the corporation and one of its agents individually, in the exclusion of evidence of agents of the corporation maker offered solely for the purpose of showing a want or failure of consideration, and inadmissible for such purpose, even though it might have been admitted for the purpose of showing what the consideration of the notes actually was at the time they were executed.

12. BILLS AND NOTES, § 165*—*when maker liable as indorser.* Where a note is payable to a corporation maker and by the maker indorsed and delivered, the indorsement on the back of the note renders such maker liable, not only as a maker but also as an indorser.

13. CONFLICT OF LAWS, § 31*—*when law of forum governs.* The lex fori, or law of the forum, governs as to the form of remedy and all matters of procedure relating thereto.

14. BILLS AND NOTES, § 317*—*when law of forum applicable in action on note.* Whether, under the laws of the State of Illinois, makers and indorsers of promissory notes may be joined in the same action is a question of practice and procedure so as to render the law of the forum applicable.

15. PARTNERSHIP, § 43*—*what not prima facie case of.* Even though stockholders of a corporation became partners as a consequence of the failure to complete the incorporation of the company by recording its charter in the recorder's office of a particular county, a prima facie case of partnership of such stockholders with one who was not an incorporator of the company, and had not subscribed to any of its stock, was not made out by proof that such person had advanced money to the majority stockholder and to the

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

company at various times and in various ways and had guaranteed the payment of certain obligations incurred by them.

16. PARTNERSHIP, § 20*—*when not created.* Special agreements for particular adventures and joint undertakings do not make a partnership.

17. BILLS AND NOTES, § 406*—*when burden not on plaintiff to show that he acquired title to notes as holder in due course.* In an action by an innocent purchaser, for value, before maturity of notes, signed by a corporation as maker, indorsed by the maker and an agent of the corporation in his individual capacity to another person, and sold by such person to plaintiff, where it was not shown that the title of the person indorsing the note to plaintiff was defective, the burden of proof did not rest upon plaintiff to show that he acquired title to the notes in question as a holder in due course under section 59 of the Negotiable Instruments Act (J. & A. ¶ 7698), applying to cases "when it is shown that the title of any person, who has negotiated the instrument, was defective."

18. NEW TRIAL, § 77*—*when on ground of newly discovered evidence properly refused.* A new trial on the ground of newly discovered evidence is properly refused where, by the exercise of reasonable diligence, the evidence could have been discovered in time to produce it for trial.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. THOMSON, Judge, presiding. Heard in this court at the March term, 1918. Affirmed. Opinion filed November 11, 1918. Rehearing denied November 25, 1918. *Certiorari* denied by Supreme Court (making opinion final).

JOHN W. CREEKMUR and D. J. DEWOLFE, for appellants.

MILLER, STARR, BROWN, PACKARD & PECKHAM, for appellee.

MR. PRESIDING JUSTICE DEVER delivered the opinion of the court.

Benjamin E. Page, plaintiff, obtained a judgment for $3,787.50 in the Circuit Court of Cook county against W. F. Hallam & Company and W. F. Hallam on two promissory notes, one for $1,000 and one for

$1,500, both dated at Lakeland, Florida, January 19, 1912. The notes were payable to the order of the maker, W. F. Hallam & Company, and were indorsed by both defendants.

The evidence in the case tends to prove that the plaintiff purchased the notes in question about February 1, 1912, from Bertram J. Bussiere for the sum of $7,500. At the time the notes were executed, Bussiere was president of the Classified Ad Company, incorporated February 18, 1911. Its charter was canceled March 30, 1912. As a defense to the action it is insisted that there was a total failure of consideration therefor; that the signatures thereto were obtained by fraud to which the plaintiff was a party, in that he was a partner of the Classified Ad Company, and that Page had knowledge of the failure of consideration, upon which the defendants rely.

It is also insisted for the defendants that the court erred in its refusal to permit defendants to file a further special plea after the suit was called for trial, which plea set up, in substance, that the notes were taken by plaintiff as collateral security for an indebtedness due him and that such indebtedness had been, as the result of other transactions, fully paid. At the time the notes in question were executed, the W. F. Hallam & Company had entered into a contract with the Classified Ad Company through its president, Bussiere, under which it was agreed that the Classified Ad Company would, by conducting an advertising campaign, provide a large increase in the business carried on by the Hallam Company. At the same time the Hallam Company executed and delivered to the Classified Ad Company notes, including the two in question, for the sum of $9,000, and also delivered to it $6,000 in certificates of deposit. The total sum of $15,000, under the arrangement, was to be expended by the Classified Ad Company in the advertising of the Hallam Company's business.

There is much evidence in the record pertaining to the conduct of Bussiere in connection with the Classified Ad Company's business and his relationship to the Hallam Company.  Without discussing this evidence it may be assumed that Bussiere's conduct was grossly fraudulent, so far as it was connected with the Hallam Company's business.  He appropriated the money which the defendant company gave him to his own personal use, and one of the warmly contested questions presented to us is whether this fraudulent conduct on his part was known to the plaintiff, Page, on February 1, 1912, at the time he says he purchased the two notes.

The trial court instructed the jury which tried the case to return a verdict in favor of the plaintiff; the jury did so, and plaintiff appeals from the judgment which was entered upon this verdict.

The evidence does not disclose that Page, the plaintiff, had any direct personal ownership or interest in the business conducted by the Classified Ad Company. It does appear that he had an arrangement with Bussiere by which he was to receive a percentage of the profits of a certain railroad project in Florida, and that he had discounted notes for Bussiere in considerable sums.  It also appears that the Classified Ad Company borrowed of plaintiff the sum of $1,000, and that he advanced the sum of $125 to Bussiere on January 13, 1912, when Bussiere went to Florida, presumably to complete his contract with the Hallam Company.

On the whole evidence, we are not prepared to say that the court erred in its evident conclusion that there was not sufficient evidence introduced on the trial to present, for the determination of the jury, a question of fact as to Page's knowledge of or participation in the fraud which was committed by Bussiere.  Page, the plaintiff, knew of Bussiere's attempt to procure the advertising contract and he agreed, before the contract was executed, to take over the notes; but this fact in and of itself is no proof that Page knew that Bussiere

would or intended to convert the proceeds from the sale of the notes to his own use. It is evident from the record that the Classified Ad Company was in fact Bussiere, and even if it be conceded, as contended, that the company had no legal existence at the time the notes were executed, and that Bussiere merely used the corporate name for the purpose of facilitating his fraudulent enterprises, the plaintiff is not, on the evidence, chargeable with knowledge of these facts or purposes. He does not appear to have been a party to or to have profited by the misconduct of Bussiere, nor does it appear that he had any knowledge of the facts referred to. Mere suspicion that one is a party to or has knowledge of a fraud is not enough; some evidence must be presented which would authorize a finding against one charged with such knowledge of or participation in fraudulent conduct, and such evidence must in quantity and quality be sufficient to raise more than a suspicion against one so charged.

"Only bad faith will defeat the title of the indorsee of commercial paper taken before maturity, for value and without knowledge of any defense thereto. Mere suspicion, the knowledge of circumstances calculated to excite suspicion, or even gross negligence of the indorsee in acquiring the paper, will not defeat his title." *Kavanagh v. Bank of America*, 239 Ill. 408.

It is insisted that the court erred in refusing a motion for leave to file the special plea tendered on the day of the trial. The present litigation was begun in December, 1913. A plea of the general issue and three special pleas were filed to the declaration on January 21, 1914. A demurrer was sustained to the third special plea on February 3, 1917. On May 2, 1917, the cause was continued on defendant's motion to secure the testimony of a witness, which was subsequently taken by deposition. On May 7, 1917, pleas were amended so as to permit a special defense which set up a Florida statute. The motion to file an additional plea was made October 1, 1917. This tendered plea set

up, in substance, that the plaintiff had received the sum of $46,250 on certain life insurance policies, which sum was paid plaintiff on the death of Bussiere; that the two notes in question were given to secure an existing indebtedness of the Classified Ad Company, and that this indebtedness had all been paid by the receipt by plaintiff of the money paid on the insurance policies referred to.

On this point the only question we have to determine is whether the tender of the plea was made in apt time. No showing was made to the trial court, at the time the plea was offered, of diligence on the part of the defendants. For the plaintiff it is insisted that the tender of the plea came too late and that under the circumstances of the case the court was right in denying leave to file the plea. Our attention has been directed to several cases decided by this and other courts, which hold that the refusal to file a tendered plea rests in the sound judicial discretion of the trial court and that where a plea is tendered for filing after a long period of time has elapsed between the bringing of the suit and the tender of the plea, the court in the exercise of a sound discretion may, where injuries might follow to the other party from the delay, refuse its assent to the filing of the plea.

"Where a defendant asks leave to file a further plea setting up an entirely new defense, especially if a long time has passed since his original plea was filed and the case is about to be reached for trial, he must support his application by showing diligence and some reasonable excuse for not having sooner presented his defense. (*Dow v. Blake*, 148 Ill. 76; *Phenix Ins. Co. v. Stocks*, 149 Ill. 319; *Dulle v. Lally*, 167 Ill. 485; *Phenix Ins Co. v. Caldwell*, 187 Ill. 73; *City of Chicago v. Cook*, 204 Ill. 373.) There is nothing to show that appellant could not have filed this plea with the general issue over 25 months before." *Wilson v. Wilson*, 125 Ill. App. 385, 388; *Mathews v. Schuessler*, 201 Ill. App. 211.

Nearly 4 years elapsed between the bringing of the suit and the presentation of the plea. No effort of any sort was made to excuse this long delay. The tender of the plea was unaccompanied by any explanation why the plea, which set up a substantially new defense, was not presented to the trial court before the case was called for trial. The present case is essentially different from the case of *Delfosse v. Kendall*, 283 Ill. 301, relied upon by defendants. In that case the record shows that counsel were misled into the belief that the substantial defense which was attempted to be made in that case could be presented under a plea of the general issue or other pleadings on file in the cause. The record there shows that counsel were taken by surprise when certain evidence was rejected by the trial court, and to meet the emergency asked leave to file an additional plea. The Supreme Court held that under the circumstances of that case the motion should have been allowed because it appeared that the failure to file the plea was the result, not of negligence, but of a misconception of the legal rights of the party under pleas on file in the cause. Somewhat similar circumstances existed in the case of *Carlson v. Johnson*, 263 Ill. 556, and other cases relied upon by counsel.

The trial court should have been placed in possession of the facts from which it might determine the good faith of the party tendering the plea. The plea tendered in the present case was offered before the jury was impaneled. The motion presented a mere request to file a plea about 4 years after defendants had filed several special pleas in addition to the general issue. The purpose of the amendment statute is, of course, to provide liberal means whereby justice may be done in the trial of lawsuits, and hence the courts have liberally interpreted the statutes so as to render the courts more efficient in doing the work for which they have been created; the decisions are in the main to the effect that amendments to pleadings in pending

lawsuits should be allowed in every case where the party seeking such privilege is able to show that he has been without culpable negligence. While the decisions are not clear upon the point, we think that the court in the exercise of a sound judicial discretion has the right to exclude a plea where it appears that a long period of time has elapsed between the date of the bringing of the suit and the offer of the plea, and where the offer of the plea is unaccompanied by any statement explaining or excusing the delay. The defense presented by the special plea is that the notes were accepted as collateral security for an indebtedness. If defendants knew this alleged fact at the time suit was brought, they should have pleaded it; if they did not know of this defense until the motion to file was made, this fact should have been shown by affidavit or otherwise.

A somewhat interesting question is raised by the exclusion by the trial court of the testimony of agents of the defendant W. F. Hallam & Company. W. F. Hallam was placed upon the witness stand and he attempted to testify to facts which would tend to show a failure of consideration for the notes and of fraud in their execution. His evidence, as also that of Miss Knudsen, secretary of the company, was excluded on the authority of *Dewey v. Warriner,* 71 Ill. 198, in which case the court said:

"The main question presented by this record, as we view it, for consideration, is this: Is the indorser of negotiable paper a competent witness to impeach its consideration?

"On the trial in the Circuit Court, on application of the plaintiff, the court excluded all the evidence of Dedrick, who was an indorser of the bill of exchange, that showed or tended to show a want of consideration of the draft, from the jury. The court also refused to permit Dewey, who was also an indorser of the draft, to testify what the original consideration of the draft was.

"In this we perceive no error. We are aware that on this question the authorities are not uniform in the

different States, but this court has several times held, and it may be regarded as well settled in this State, that an indorser of negotiable paper, having given it the sanction of his own name, shall not be permitted, by his own testimony, to impeach the consideration of it. (*Walters v. Smith,* 23 Ill. 342; *Walters v. Witherell,* 43 Ill. 388.)''

It is earnestly insisted on behalf of the defendants that the case of *Dewey v. Warriner, supra,* should not be accepted in this State as an authority on the point raised. It is insisted that the case is founded upon the decision of the case of *Walton v. Shelley,* 1 T. R. 296, an English case, which was overruled by the English courts a few years after its decision, and the doctrine of that case has never since been upheld in the English courts. The doctrine of the *Walton v. Shelley* case has not been followed by all of the courts of this country. It is sufficient for us, however, to know that it has been applied and, so far as we know, constantly followed by the Supreme Court of this State. The argument against the reasonableness of the rule or its inherent. injustice, or that it has never been cited or followed by any later cases decided by the Supreme Court of this State, can avail the defendants nothing here. We are bound by the case of *Dewey v. Warriner, supra,* until the Supreme Court itself indicates its dissatisfaction of the doctrine adopted therein. There is substantial reason in support of the argument that a sound public policy would prevent indorsers from questioning the value and validity of a negotiable instrument either for failure or for want of consideration, where such paper has passed into the hands of an innocent purchaser who has received it in due course.

It is asserted that this evidence was admissible for the purpose of showing what the consideration of the notes actually was at the time they were executed. There might have been merit in this contention if it appeared, from the record, that the defendants had tendered any admissible evidence whatsoever of a fail-

ure of consideration. The testimony of Hallam and Miss Knudsen was offered solely for the purpose of showing a want or failure of consideration, and as under the *Dewey v. Warriner* case this evidence was inadmissible for this purpose, there was no reversible error in excluding the testimony of these witnesses. The rule of the *Dewey v. Warriner* case applies to a corporation indorser of a promissory note, and as such indorser can act. only by agent, the rule would apply where the evidence of such agent is offered for the purpose of impeaching the consideration for which a note is given. We also think that where a note is made payable to a maker and by the maker indorsed and delivered, the indorsement on the back of the note renders such maker liable, not only as a maker but also as an indorser of the note. It is our opinion also that the rule enunciated in *Dewey v. Warriner* was not modified, as urged, by statutes subsequently enacted by the legislature.

It is said by counsel for defendants that the laws of Florida do not permit the makers and indorsers to be joined in the same suit, and that it was error to so join them in an action brought in this State. There is no merit in this contention.

Whether, under the laws of this State, makers and indorsers of a promissory note may be joined in the same suit is a question of practice and procedure.

Nor do we think the court erred in excluding tendered proof of statements by Bussiere, made in the absence of Page, for the purpose of proving that a partnership existed between them. It is argued that the Classified Ad Company was not a corporation and that stockholders became partners, as a consequence, of a failure to complete the incorporation of the company by recording its charter in the recorder's office of Cook county. Assuming this contention to be sound, we are unable to see how it affects the rights of Page. He was not an incorporator of the company,

nor had he subscribed to any of its stock. As hereinbefore stated, he had advanced money at various times and in various ways to Bussiere and the company and had guaranteed the payment of certain obligations incurred by them. Standing alone, these facts did not make out a prima facie case of partnership. If the evidence had tended to show the existence of a partnership between Page and Bussiere and the Classified Ad Company, the partners would of course have been bound by the agreements and statements of partners made in connection with the business of the partnership. Under the circumstances of the case, Page could not be bound by the statements of Bussiere made out of his presence.

"Special agreements for particular adventures and joint undertakings do not make a partnership. This rule has received apt illustration by Chancellor Kent in his Commentaries, vol. 3, p. 33. He says: 'A person may be allowed in special cases to receive a part of the profits of a business without becoming a legal or responsible partner.' " *Chicago Die & Electric Co. v. Nathan,* 141 Ill. App. 173.

The burden of proof did not rest upon plaintiff to show that he acquired the title to the notes in question as a holder in due course under section 59 of the Negotiable Instruments Act (J. & A. ¶ 7698). This act applies to cases "when it is shown that the title of any person, who has negotiated the instrument, was defective." The evidence in the case fails to make the necessary defective title. Had the evidence shown that the title of the person who negotiated the notes to Page was defective, the burden would then have rested upon Page to show that at the time the notes were negotiated he took them without notice of any infirmity or defect in the title of the person negotiating them. *Justice v. Stonecipher,* 267 Ill. 448.

It is urged that the trial court erred in its refusal to grant a new trial on the ground of newly discovered evidence. The motion was supported by the affidavits

of two witnesses.  An examination of these affidavits discloses that one of the affiants, C. L. Richardson, Jr., was employed by the Hallam Company at the time the notes were executed and delivered.  We think the affidavits were insufficient to show that this evidence was not procurable at and before the time the case went to trial.  It is apparent that W. F. Hallam, by the exercise of reasonable diligence, could have discovered this evidence in time to produce it at the trial.  In *O'Malley v. Illinois Publishing & Printing Co.*, 194 Ill. App. 544, this court speaking through Mr. Justice Holdom said:

"We find nothing in the affidavits presented regarding newly discovered evidence which shows that defendant used due diligence to procure the witnesses named, or their testimony by way of deposition, for use upon the trial of the cause.  Robinson was said to be a convict in the penitentiary at Stillwater, Minnesota, and his deposition presumably could have been taken. The material point is not that the testimony discovered came to the knowledge of defendant after the trial, but, could such evidence have been procured for use upon the trial by the exercise of due diligence.  It is evident that the same agencies which discovered such evidence after the trial were just as available to defendant before the trial."

The judgment of the Circuit Court will be affirmed.

*Affirmed.*