COLUMBIAN BANKING COMPANY, Respondent, vs. BOWEN, Appellant.

*December 14, 1907—January 8, 1908.*

*Bills and notes: Negotiable instrument law: Construction: Checks: Drafts: Negotiation: Liability of payee: Presentment for payment: Delay: "Business hours" of a bank: Evidence: Usage and custom: "Reasonable hours:" Judicial notice: Presumptions.*

1. The negotiable instrument law—secs. 1675 to 1684—6, Stats. (Supp. 1906; Laws of 1899, ch. 356)—was enacted for the purpose of furnishing, in itself, a certain guide for the determination of all questions covered thereby relating to commercial paper, and, so far as it speaks without ambiguity as to any such question, reference to case law as it existed prior to the enactment is not only unnecessary but liable to be misleading.

2. Such statute is not merely a legislative codification of judicial rules previously existing, but is, so far as it goes, an incorporation into the written law of the law merchant as recognized in Wisconsin, with such changes or modifications and additions as to make a system harmonizing, so far as practicable, with that prevailing in other states.

3. The negotiable instrument law—secs. 1675 to 1684—6, Stats. (Supp. 1906; Laws of 1899, ch. 356)—defines a bill of exchange as an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or bearer. Sec. 1684—1 defines a check as a bill of exchange drawn on a bank, payable on demand, and provides that, except as in the act otherwise provided, the provisions applicable to a bill of exchange payable on demand apply to a check. Sec. 1684—2 declares that a check must be presented for payment within a reasonable time after its issue or the drawer

will be discharged from liability thereon to the extent of the loss caused by the delay. And sec. 1678—1 provides as to a bill of exchange payable on demand, which includes by force of the statute a check or draft on a bank, that presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof. Defendant, payee of a draft drawn by a bank on a correspondent bank, put the draft into circulation with his unqualified indorsement. The draft was dated June 10th, and was forwarded by mail to defendant's immediate indorsee at Spokane, Washington, where he was temporarily, and was received by him on June 20th. On July 4th the indorsee negotiated the draft to plaintiff at San Francisco, California, and received its face. On the latter day plaintiff forwarded the draft by mail to its correspondent, who received it on July 18th, and on that day, after due presentment and re-. fusal of payment, its nonpayment was duly protested. *Held:*

(1) The delay in presenting the draft for payment between its date and the negotiation to the bank in San Francisco was immaterial.

(2) Under the evidence, stated in the opinion, the circulating character of the draft had been preserved, warranting a finding that the plaintiff came into possession of the draft in due course.

4. Under sec. 1678—2, Stats. (Supp. 1906; Laws of 1899, ch. 356)— providing that presentment for payment, to be sufficient, must be made at a reasonable hour on a business day,—evidence that a bank draft, after taking its course through the clearing house, was presented to the drawee for payment on the afternoon of the same day between the hours of 3 and 6 o'clock, and that such was the customary way of doing business in the place where the drawee was located, satisfies the statute.

5. What constitutes business hours of a bank, within the meaning of sec. 1678—2, Stats. (Supp. 1906; Laws of 1899, ch. 356), has reference to the general custom at the place of the particular transaction in question.

6. In case presentment for payment of a negotiable instrument occurs in a foreign jurisdiction, the courts of Wisconsin cannot take judicial notice of what constitutes reasonable hours on a business day in the foreign jurisdiction.

7. Whether a negotiable instrument was presented for payment at a reasonable hour on a business day is a matter of proof; but a notarial certificate of the transaction, if regular and furnishing *prima facie* proof that the instrument was duly presented for payment, raises a presumption that the presentment was made at a proper time.

APPEAL from a judgment of the circuit court for Barron county: A. J. VINJE, Circuit Judge. *Affirmed.*

June 10, 1903, the banking firm known as the Farmers' & Merchants' Bank, of Bangor, Wisconsin, sold to the defendant a $400 draft, drawn in the usual form, dated on that day, payable to defendant's order, and drawn by such firm on the National Bank of North America, at Chicago, Illinois. The draft was sent to the defendant at Barron, Wisconsin, and was indorsed by him to A. R. Tabbert, to whom it was forwarded by mail, at Spokane, Washington, June 16, 1903, and was there received by him June 20th thereafter. He was at Spokane temporarily and was on his way to the city of San Francisco, California. July 14, 1903, he indorsed the draft and sold the same to the plaintiff at such city, receiving $400 therefor. On that day, in due course, plaintiff sent the draft by mail to the Bankers' National Bank, of Chicago, Illinois, by which it was received July 18th thereafter, and was then, as requested, duly presented to the drawee for payment, which was refused, whereupon it was duly protested for nonpayment by a duly authorized notary public, who forwarded a manifest thereof with notices of protest for A. R. Tabbert, the plaintiff and the defendant, to the plaintiff at San Francisco, California, and also sent due notice to the National Bank of North America at Chicago, Illinois, and to the drawer at Bangor, Wisconsin, July 19, 1903. Plaintiff upon receipt of the manifest and notices duly sent the one for defendant to him at Barron, Wisconsin, by whom it was duly received, and sent the one for Tabbert by mail to his postoffice address and reputed place of residence, that being San Francisco, California. Thereafter due demand was made on defendant for payment of the draft, and the same was refused. July 28, 1903, the property of the drawer was placed in the possession of a receiver, who duly paid upon the draft $144.49 January 6, 1904, $61.93 May 20th thereafter, and $30.96 June 5th

following. Plaintiff was the owner of the draft at the time of the commencement of the action, and at the time of the trial thereof there was due thereon $210.

The pleadings presented issues for decision involving facts as above detailed. The case was tried by the court, resulting in findings of fact in accordance with the statement, and a conclusion of law that plaintiff became the owner of the draft in due course, and was entitled to judgment for $210, with costs. Judgment was accordingly rendered.

The cause was submitted for the appellant on the brief of *Clarence C. Coe* and *Arthur E. Coe,* and for the respondent on that of *McConnell & Schweizer.*

MARSHALL, J. Counsel for appellant have presented quite an extended argument, referring to many authorities, as to the law antedating and independently of the negotiable instrument statute—secs. 1675 to 1684—6, Stats. (Supp. 1906; Laws of 1899, ch. 356)—to support the proposition that appellant was released from liability on the instrument in question, because of the period intervening between his parting therewith and the presentation thereof to the drawee for payment. Such statute was enacted for the purpose of furnishing, in itself, a certain guide for the determination of all questions covered thereby relating to commercial paper, and, therefore, so far as it speaks without ambiguity as to any such question, reference to case law as it existed prior to the enactment is unnecessary and is liable to be misleading.

The negotiable instrument law is not merely a legislative codification of judicial rules previously existing in this state making that written law which was before unwritten. It is, so far as it goes, an incorporation into written law of the common law of the state, so to speak, the law-merchant generally as recognized here, with such changes or modifications and additions as to make a system harmonizing, so far as practicable, with that prevailing in other states. That it con-

tains some quite material changes in previous rules governing commercial paper we have had occasion heretofore to point out. *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192; *Auk-land v. Arnold,* 131 Wis. 64, 111 N. W. 212.

The primary question discussed by appellant's counsel, it is believed, is fully covered by the negotiable instrument law. There are a multitude of decisions regarding the character of a bill of exchange and that of a check, as those terms are used in business transactions, and to what extent the incidents of one are identical with those of the other, which decisions are so variant in their phrasing of the matter as to produce more or less confusion in respect thereto with many apparent, and some real, conflicts, to remedy which was one of the principal objects of the law.

To that end it was provided in sec. 1680, "A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or bearer," and it was further provided in sec. 1684—1, "A check is a bill of exchange drawn on a bank, payable on demand."

As to whether the incidents of the species of bills of exchange last mentioned are the same as those of bills of exchange generally, it was further provided in the section last referred to, "Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check." The only exception referred to material to this case is contained in sec. 1684—2, in these words: "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

Keeping in mind that the discharge from liability above referred to because of unreasonable delay after the issuance

of a check in presenting it for payment is of the drawer only, and that this action is against the payee who indorsed the instrument in question without qualification and put it in circulation, we turn to sec. 1678—1, which provides, as to a bill of exchange payable on demand, which from the foregoing obviously includes a check or draft on a bank of the character of the one in question, "presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof."

From the foregoing it seems plain that as regards the payee of such an instrument as we have here, who puts the same in circulation with his unqualified indorsement thereon, and all subsequent parties thereto so indorsing the same, presentment for payment is sufficient, as regards their liability, if made within a reasonable time after the last negotiation. A bill of exchange payable on demand, regardless of its character, put in circulation, so long as its circulating character is preserved may be outstanding without impairing the liability of indorsers thereof. Formerly the length of time within which a bill of exchange might circulate without impairing such liability was more or less uncertain, rendering it very difficult to determine any one case by the decision in another. That difficulty was removed, so far as practicable, by the provision that only the time need be considered intervening between the last negotiation and the presentment. That is recognized as a radical change in the law as it formerly existed. Selover, Neg. Inst. Law, § 195.

As to an ordinary bill of exchange put in circulation, it was quite anciently held that the period between July 18th of one year and January 16th of the next year was not necessarily unreasonable. *Gowan v. Jackson,* 20 Johns. 176. Perhaps one might now keep a bill of exchange for such length of time as to destroy its circulating character notwithstanding he ultimately passed it along to another person, but that situation, as we view the case, does not exist here.

Applying the law as aforesaid to the facts of this case it is readily seen that the delay in presenting the paper for payment between its date and the negotiation to the bank at San Francisco is immaterial. Appellant unqualifiedly indorsed the paper and put it in circulation by sending it to Tabbert at a distant part of the country, probably knowing that he was a traveler. Tabbert received the paper while journeying with the intention of going to San Francisco and held it till he arrived there and then negotiated it. It was promptly presented for payment thereafter and so in time, as regards that circumstance, to preserve the liability of appellant.

The court decided, as indicated, that Tabbert was a traveler with San Francisco as his destination and properly held that such circumstance sufficiently explained, if any explanation were necessary, the lapse of time between his reception of the paper and his negotiation thereof, preserving its circulating character and warranting the finding that the respondent came thereby in due course.

The point is made that the instrument was not presented to the drawee for payment during banking hours. The negotiable instrument law at sec. 1678—2 provides that "Presentment for payment, to be sufficient, must be made: . . . at a reasonable hour on a business day. . . ." The evidence shows that the paper, after taking its course through the clearing house, was presented to the drawee for payment on the afternoon of the same day between the hours of 3 and 6 o'clock. The proof is to the effect that such was the customary way of doing such business in Chicago, where the drawee was located. That is, as we understand it, the business day of the bank continued after the closing of the clearing-house transactions so as to enable banks, holding paper for collection, refused recognition in such transactions, to present the same for payment as was done in this case. That satisfies the statute. What constitutes business hours of a

bank, within the meaning of the statute, has reference to the general custom at the place of the particular transaction in question. In case of a transaction occurring in a foreign jurisdiction, as in the instance in question, the court cannot take judicial notice of what constitutes reasonable hours on a business day. 1 Daniel, Neg. Inst. (5th ed.) § 601. It is a matter of proof, though in case of the notarial certificate of the transaction, as here, being regular so as to furnish *prima facie* proof that the paper was duly presented for payment, that raises the presumption that the presentment was made at a proper time. *Cayuga Co. Bank v. Hunt,* 2 Hill, 635.

  *By the Court.*—Judgment affirmed.