NATIONAL BANK OF COMMERCE, APPELLEE, V. FARMERS & MERCHANTS BANK, APPELLANT.

FILED NOVEMBER 16, 1910. No. 16,186.

Banks and Banking: FORGED DRAFT: PAYMENT: RECOVERY. *State Bank v. First Nat. Bank, ante,* p. 351, reexamined, reaffirmed, and *held* decisive of this case.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*Tibbets & Anderson* and *F. B. Baylor,* for appellant.

*Hainer & Smith, contra.*

FAWCETT, J.

Appeal from the district court for Lancaster county.

Plaintiff's petition is as follows: "The plaintiff, a corporation duly and legally organized and existing under and by virtue of the banking laws of the United States, complains of the defendant, a corporation duly and legally organized and existing under and by virtue of the banking laws of the state of Nebraska, and for cause of action alleges that on July 7, 1908, said defendant, by

and through the clearing house of Lincoln, Nebraska, presented to the plaintiff and demanded payment of a certain instrument in words and figures following, to wit:

" 'No. 2738. Nebraska Printing Company 348-322 South 12th street, Lincoln, Neb. July 3d, 1908. Pay to the order of P. Wall $24.46, twenty-four 46-100 dollars. Nebraska Printing Company, R.. E. Wright. To National Bank of Commerce, Lincoln, Neb. United States Depository.'

"That on the back thereof appear the signatures of P. Wall and O. H. Hereford. That the said Nebraska Print-' ing Company had an account with the .plaintiff and funds upon which checks might properly be drawn. That R. E. Wright, a member and officer of said company, had full power and authority to draw on said funds by check by signing said name of 'Nebraska Printing Company—R. E. Wright.' That said instrument, purporting on its face to be a check issued by the Nebraska Printing Company by R. E. Wright, and drawn on the National Bank of Commerce, plaintiff herein, was and is in fact and in truth a false, forged and counterfeit check, and was not issued by or under the direction or authority or with the knowledge or consent of said Nebraska Printing Company or any of its officers. That plaintiff did not detect that the alleged signature of said R. E. Wright, which closely resembles the genuine signature of said R. E. Wright, was false, counterfeit and a forgery until after payment of the amount called for by said check, to wit, $24.46, to said defendant. That said defendant presented said check for payment, and the plaintiff, believing said false, forged and counterfeit signature appended thereto to be the genuine signature of said 'Nebraska Printing Company— R. E. Wright,' and having no knowledge or information to the contrary, did upon such request, made by defendant as aforesaid, duly pay to said defendant on said false forged and counterfeit check said amount, to wit, $24.46. That promptly upon the discovery of the forgery and that said check was false and a counterfeit, the plaintiff duly

demanded of said defendant that it repay to said plaintiff the amount so obtained on said false, fraudulent and counterfeit check, to wit, $24.46, but that said bank wholly failed, neglected and refused so to do, though often requested.

"Wherefore plaintiff asks judgment against said bank for the sum of $24.46 paid as aforesaid, together with interest thereon at 7 per cent. per annum from said 7th day of July, 1908, and for the costs of this action."

To this petition defendant interposed a general demurrer. The demurrer was overruled, and, defendant electing to stand thereon, judgment was entered for plaintiff for the amount of its claim. Defendant appeals.

This case is ruled by *State Bank v. First Nat. Bank, ante,* p. 351. The cases are exactly alike on every essential point. In that case counsel for the parties conceded that the negotiable instruments statute did not control, while here it is contended by counsel for plaintiff that the statute does control. We are all agreed that counsel is in error in this contention. The provisions of the negotiable instruments law which counsel claim apply are: "Every person negotiating an instrument by delivery or by qualified indorsement warrants: (1) That the instrument is genuine in all respects what is (it) purports to be. (2) That he has good title to it." Comp. St. 1909, ch. 41, sec. 65.

What is meant by "negotiating" an instrument within the meaning of the statute? Counsel answer that question by quoting section 30 of the negotiable instruments law (Comp. St., ch. 41) as follows: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof." To "negotiate" is defined in the Century Dictionary: "To treat with another or others; * * * to arrange for or procure by negotiation; bring about by mutual arrangement, discussion, or bargaining; * * * to put into circulation by transference and assignment of claim by indorsement: as, to *negotiate* a bill of exchange;

* * * to dispose of by sale or transfer: as, to *negotiate* securities." In 5 Words and Phrases, 4771, it is .said: "To 'negotiate' means to conclude by bargain, treaty, or agreement; * * * to transfer, to sell, to pass, to procure by mutual intercourse and agreement with another, to arrange for, to settle by dealing and management. * * * The power to 'negotiate' a bill or note is the power to indorse and deliver it to another, so that the right of action thereon shall pass to the indorsee or holder. * * * 'Negotiation' means the act by which a bill of exchange or promissory note is put into circulation by being passed by one of the original parties to another person." If A gives B a check on C bank, and B presents the check at the counter of C, no negotiation is necessary or had; he simply demands and receives payment; but, if B goes to D store and buys a bill of goods and tenders the indorsed check in payment, he negotiates the check. The difference is clear and well defined. The presentation by defendant of the check in controversy, *for payment,* was not a "negotiation" of the check within the meaning of the statute quoted.

Nor do we think that the payment by a bank of a check drawn upon it constitutes such bank a "holder" within the meaning of the statute. Counsel cite 4 Words and Phrases, 3319, and *Bowling v. Harrison,* 47 U. S. 248, 12 L. ed. 425, in support of their contention that "holder" within the meaning of section 30, ch. 41, *supra,* includes the payee of a check. The paragraph from Words and Phrases reads as follows: "The holder of commercial paper is a person having possession of the paper and making demand, whether in his own right or as agent for another, and includes a notary or a bank holding the same for collection." *Bowling v. Harrison* was not an action upon a check, but was an action by the indorsee of a promissory note against the indorser. The note by its terms was made payable at a particular bank. The second paragraph of the syllabus states: "The term 'holder' includes the bank at which the note is payable, and the notary who may hold

the note as the agent of the owner for the purpose of making demand and protest." In this we concur. But the difference between that case and this is marked. In that case the fact that the note had been placed by the indorsee in the hands of the bank, where by its terms it was payable, did not constitute a discharge of the note; but it is a very different matter when a check is presented to the bank upon which it is drawn, and is paid by such bank. Such payment discharges the instrument (Comp. St. 1909, ch. 41, sec. 118) and the bank is not thereafter, within the meaning of the statute, a "holder" of such check.

No question of bad faith on the part of defendant bank arises in this case. It obtained the check from a well-known, reputable citizen of Lincoln in the regular course of business, and therefore is not within the exception in *First Nat. Bank of Orleans v. State Bank of Alma*, 22 Neb. 769. As stated in *State Bank v. First Nat. Bank, supra:* "We do not feel justified in expanding the rule announced in the *Orleans* case." We are entirely satisfied with our holding in *State Bank v. First Nat. Bank, supra,* and, upon the authority of that case, the judgment in this case is reversed and the cause remanded for further proceedings.

REVERSED.

SEDGWICK, J., concurs in conclusion.