AURORA STATE BANK, APPELLEE, V. HAYES-EAMES ELEVA-
TOR COMPANY ET AL., APPELLANTS.

FILED JANUARY 9, 1911.  No. 16,251.

1. **Banks and Banking**: CHECKS: PAYMENT: EFFECT. Payment by a
bank of a check drawn upon it does not constitute such bank a
holder within the meaning of the negotiable instruments law
(Comp. St. 1909, ch. 41, sec. 30), providing that an instrument is
negotiated when it is transferred so as to constitute the transferee
a holder thereof. *National Bank of Commerce v. Farmers &
Merchants Nat. Bank*, 87 Neb. 841, followed.

2. ———: ———: ———: ———. Payment by a bank of a check
drawn upon it, in the usual course and in the absence of fraud
or mistake of fact, extinguishes the instrument, and the bank by
thereafter putting it in circulation cannot create a liability
thereon against its maker or prior indorser.

APPEAL from the district court for Hamilton county:
GEORGE F. CORCORAN, JUDGE. *Reversed and dismissed as
to appellants and affirmed as to other defendants.*

*Flansburg & Williams*, for appellants.

*J. H. Edmondson* and *Charles P. Craft*, contra.

BARNES, J.

Action by the Aurora State Bank against the Hayes-
Eames Elevator Company, M. Wagner, O. E. Bedell, and
A. M. Glover, upon a written instrument which reads as
follows:
"No. 541                    Giltner, Neb. 2-28-1906.
"Pay to the order of M. Wagner $573.80, five hundred
seventy three 80-100 dollars.

"Gross                    For Sc a 30 per bu.
"Tare                     Hayes-Eames Elevator Co.
"Net lbs.                 O. E. Bedell.
"Net 1A, 12    10 bus. 57654."
On the back of the instrument are the following indorse-
ments:  "M. Wagner."  "A. M. Glover."  And across its

face is written: "Protested for nonpayment this 28 day of March, 1906. Charles Glover, Notary Public."

There was a trial to the court without the intervention of a jury. The plaintiff had judgment against the defendants, the elevator company and M. Wagner, and they have appealed. The facts disclosed by the record are in substance as follows: At the time, and for more than five years before the instrument in suit was made, the appellant, the Hayes-Eames Elevator Company, was engaged in buying and shipping grain in the village of Giltner, Hamilton county, Nebraska, by and through one O. E. Bedell, its agent at that place. During all of that time it was the custom of the elevator company to draw its checks in payment for grain purchased, which were understood to be drawn upon the Bank of Bromfield, located and doing a banking business in that village. The bank invariably paid said checks and charged them to the account of the elevator company. At the close of each day's business the agent of the company made a report of the business done, and of the checks drawn by him on the bank at Giltner, to the main office of the company at Lincoln, Nebraska, and in case of any overdraft he made a sight draft on the Lincoln office to cover the amount thereof. On the 28th day of February, 1906, following the usual custom, Bedell, the agent of the elevator company, drew the check in question, which in form and substance is the same as its ordinary grain check, and delivered it to M. Wagner, who immediately presented it to the Bank of Bromfield, and it was paid, but not canceled. Wagner took the money received as payment of the check and deposited it in the Citizens Bank of Giltner to the credit of the elevator company. It further appears that for some time before the issuance and payment of the check in question there was a disagreement between the elevator company and the Bromfield bank as to the state of the elevator company's account, and the company had been trying to have the bank examine and correct the discrepancy, but without success. When the check was

drawn the elevator company claimed a credit at the bank of $3.10 more than the check called for, while the bank now claims that the check caused a large overdraft. It also appears that one month after the presentation and payment of the check the president of the bank delivered it to his brother, one A. M. Glover, who wrote his name on the back thereof, in turn delivered it to the plaintiff, the Aurora State Bank, and received therefor $73.80 in cash and $500 in New York exchange. The check was then sent to the plaintiff's Omaha correspondent for collection. Payment thereof was demanded of the bank of Bromfield, which was refused, the check was protested, and the plaintiff thereupon brought this action against the elevator company *et al.* to recover the sum named therein, with interest. The trial court gave the plaintiff judgment for that amount, on the theory that the check was a negotiable instrument, and notwithstanding the foregoing facts the Aurora State Bank was entitled, as a *bona fide* holder, to recover the amount of the check from its maker.

The defendants contend (*a*) that the court erred in treating the check as a negotiable instrument; (*b*) that when the Bank of Bromfield paid the check to the person named therein its liability as maker was discharged, and such payment did not constitute the bank a holder within the meaning of the negotiable instruments act so as to again put the check into circulation, and thus render the maker liable for its payment.

In support of defendants' first assignment, our attention is directed to the first section of the negotiable instruments act (Comp. St. 1909, ch. 41; Ann. St. 1909, sec. 9200), where, among other things, it is provided: "Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty." It will be observed by an examination of the check in question that the name of the drawee is not indicated therein at all, and therefore it would seem that the instrument is nonnegotiable, at least in form; but we

find it unnecessary to determine that question in order to properly dispose of this appeal. A similar question to the one raised by defendants' second contention was before us in *National Bank of Commerce v. Farmers & Merchants Nat. Bank*, 87 Neb. 841. In that case a certain forged check was presented to the plaintiff, which was the drawee bank, by the defendant through the clearing house and paid without detection. Afterwards, when the forgery was detected, plaintiff demanded repayment of the check of the defendant bank, and upon refusal brought suit to recover the amount thereof. It was held that, when the check was presented to the drawee bank and paid in due course, such payment was not a negotiation of it within the meaning of the negotiable instruments act, but was an extinguishment of the instrument. It was there said: " 'An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof.' To 'negotiate' is defined in the Century Dictionary: 'To treat with another or others; * * * to arrange for or procure by negotiation; bring about by mutual arrangement, discussion, or bargaining; * * * to put into circulation by transference and assignment of claim by indorsement: as, to *negotiate* a bill of exchange; * * * to dispose of by sale or transfer; as, to *negotiate* securities.' In 5 Words and Phrases, 4771, it is said: 'To "negotiate" means to conclude by bargain, treaty, or agreement; * * * to transfer, to sell, to pass, to procure by mutual intercourse and agreement with another, to arrange for, to settle by dealing and management. * * * The power to "negotiate" a bill or note is the power to indorse and deliver it to another, so that the right of action thereon shall pass to the indorsee or holder. * * * "Negotiation" means the act by which a bill of exchange or promissory note is put into circulation by being passed by one of the original parties to another person.' If A gives B a check on C's bank, and B presents the check at the counter of C, no negotia-

tion is necessary or had, he simply demands and receives payment; but, if B goes to D store and buys a bill of goods and tenders the indorsed check in payment, he negotiates the check. The difference is clear and well defined. The presentation by defendant of the check in controversy, *for payment,* was not a 'negotiation' of the check within the meaning of the statute quoted. Nor do we think that the payment by a bank of a check drawn upon it constitutes such bank a 'holder' within the meaning of the statute. * * * When a check is presented to the bank upon which it is drawn, and is paid by such bank, such payment discharges the instrument (Comp. St. 1909, ch. 41, sec 118), and the bank is not thereafter, within the meaning of the statute, a 'holder' of such check."

We think the foregoing clearly disposes of the question involved in the case at bar. When the Bank of Bromfield paid the check in question in the usual course, and in the absence of fraud or mistake, such payment extinguished the instrument, and the bank could not thereafter reissue it so as to create a liability thereon against the maker or prior indorser thereof. We are therefore of opinion that the district court erred in rendering judgment for the plaintiff and against the appellants; and, as to the Hayes-Eames Elevator Company and M. Wagner, that judgment is reversed and the action is dismissed; but this decision is not to be taken as an adjudication between the Hayes-Eames Elevator Company and the Bank of Bromfield as to the condition or state of their disputed account. The other defendants not having appealed, the judgment of the district court, as to them, is hereby affirmed.

JUDGMENT ACCORDINGLY.

REESE, C. J., not sitting.