No. 24,902.

CONSOLIDATED MOTORS COMPANY, *Appellee,* v. D. F. URSCHEL,
*Appellant.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Fraud in Its Inception Admitted—Burden of Proof on
   Plaintiff to Show He is Holder in Due Course.* In an action on a nego-
   tiable note where fraud in its inception is admitted the plaintiff's burden
   of showing that he is a holder in due course is not fully met merely by
   proof that he acquired it before maturity and for value.

2. SAME—*Payable to Order of Maker—Fraud as a Defense.* One who is in-
   duced by fraud to sign, indorse and deliver a note made payable to .his
   own order is not by his unqualified indorsement in blank precluded from
   setting up the fraud as a defense, in an action on such note brought by
   one who is not a holder in due course.

Appeal from Marion district court; CASSIUS M. CLARK, judge. Opinion
filed January 12, 1924. Reversed.

*John Madden, John Madden, jr., J. T. Rogers,* all of Wichita, and *Dennis
Madden,* of Topeka, for the appellant.

*C. C. Yankey, W. E. Holmes, D. W. Eaton, John L. Gleason,* all of Wichita,
and *H. J. Eaton,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MASON, J.:   Consolidated Motors Company sued D. F. Urschel,
claiming to be the holder in due course of a negotiable note upon
which he was liable. Judgment was rendered for the plaintiff and
the defendant appeals.

1. The instrument sued upon was a "myself" note, executed by
Urschel, made payable to his own order, and by him indorsed in
blank. The answer alleged that Urschel signed, indorsed and de-
livered the note to the Associated Mill and Elevator Company,
being induced to do so by its false and fraudulent misrepresentations
of material matters. In the course of the preliminary statements
to the jury the plaintiff's attorney admitted the fraud as alleged in
the answer, and the defendant's attorney admitted that the plaintiff
was the owner and holder of the note for value and before maturity.
The plaintiff then moved for judgment as prayed in the petition,
and the motion was sustained.

The title of the Associated Mill and Elevator Company to the
note was defective because of its fraud in obtaining it (Neg. Inst.

Law, § 62; R. S. 52-505), and if the ordinary rule concerning negotiable instruments applies the burden was on the plaintiff to prove that it was a holder in due course (§ 66). This burden was not met by the admission made, because notwithstanding the plaintiff acquired the note before due and for value it might have known all about the fraud and this would prevent its becoming a purchaser in good faith, which was necessary to constitute it a holder in due course (§ 59). (*Ireland v. Shore,* 91 Kan. 326, 137 Pac. 926; *Beachy v. Jones,* 108 Kan. 236, 195 Pac. 184; see, also, *Bank v. Birch,* 111 Kan. 283, 286, 207 Pac. 191.)

2. The plaintiff contends, however, that because of the defendant being an indorser he is precluded from questioning the validity of the title of the first taker of the note—the perpetrator of the fraud—and asserts that this contention was upheld in a recent decision. (*Leach v. Urschel,* 112 Kan. 629, 212 Pac. 111.) The case cited did not decide that one who had been fraudulently induced to sign, indorse and deliver such a note would be prevented by the fact of his indorsement from defending an action brought upon it by the swindler or by one who merely stood in his shoes. It held that the note there involved was negotiable and that its negotiability was not impaired by these words appearing above the name of the payee (who was also the maker) where it was written on the back of the instrument: "There are no conditions offsetting this note and any bank, banker, corporation or individual has my permission to purchase the same." (p. 631.) After quoting the provision of the statute that "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity" (p. 633) the opinion proceeded "Now it cannot be said that the recital on the back of this note indicated any intention on the part of the signer to be bound in any other capacity than as indorser, and it is not discernible that the recital had any significance which would add to or detract from the liability of an indorser under ordinary rules of law. Certainly the indorser's assurance that there were 'no conditions offsetting this note' was not a warning that there was some infirmity in it. It did not destroy the note's negotiability." (p. 633.) Obviously the language quoted was used solely with reference to the effect of the words appearing above the indorsement, and did not undertake to define the obligations assumed by an indorser of a note who is also the maker.

The warranties assumed by the negotiator of a note are fixed by the statute, one section of which reads:

"Every person negotiating an instrument by delivery, or by a qualified indorsement, warrants: (1) That the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; (4) that he has no knowledge of any fact which would impair the validity of the instrument or render it valueless; but when the negotiation is by delivery only, the warranty extends in favor of no holder other than the immediate transferee." (Neg. Inst. Law, § 72.) .

It is argued that the defendant, although the maker of the note, is also the indorser, and as indorser must be held to have made the guaranties referred to, regardless of any question of innocent purchase. That the defendant is not in all respects on the footing of an ordinary indorser is clear from the provision of the statute that such a note is not complete until it is indorsed (§ 191), which is merely declaratory of the law as it had previously been determined. (8 C. J. 176; 3 R. C. L. 1151-2.) The note was not negotiated by a qualified indorsement, for that involves the use of "without recourse" or an equivalent phrase (§ 45); but when the defendant gave it to the first taker—the perpetrator of the fraud—he did in a sense negotiate it by delivery, for a note payable to bearer is by the statute negotiated by delivery (§ 37) and a note indorsed in blank is payable to bearer (§ 41). But this note could not have been negotiated at all without the indorsement—the indorsement was a necessary part of the negotiation. The transaction referred to as a negotiation was really the delivery of the note to the first taker. The portion of the statute above quoted plainly has reference to a holder who either indorses a note "without recourse" or passes it on in the same condition in which he received it, making no indorsement at all. Such a person, although he does not become subject to the ordinary liability of an indorser, is declared by the statute to make certain warranties regarding the instrument. It may well be doubted whether a warranty of genuineness, or any of the other matters enumerated, should be construed as a guaranty that the person making it had not been defrauded—a fact of which he would necessarily be in ignorance at the time of its delivery. The fraud that was practiced on the defendant did not make his own title defective, it made defective the title of the person who obtained the note from him, and he can hardly be conceived as breaking any warranty to the person who had defrauded him. Moreover, the statutory warranty is expressly limited (in the case

of negotiation by delivery) to the immediate transferee—in this case to the Associated Mill and Elevator Company, which is admitted to have procured it by fraud. But in any event the present instance is not within the reason or spirit of the statute making the indorser a warrantor, nor within its letter when the portion quoted is read in connection with the section following it, which provides that one who indorses a note "without qualification" undertakes certain warranties, but only "to all subsequent holders in due course." Inasmuch as the defendant's indorsement was "without qualification," by the very terms of the statute such warranty as he is deemed to have made inured only to the benefit of holders in due course, and the plaintiff did not meet the burden laid upon it of showing that it belonged in that category.

Moreover, reason and authority alike justify the conclusion that the defendant is not liable, on the ground that although by writing his name on the back of the note he in a literal sense indorsed it, he did not thereby become an indorser in such sense as to assume a liability in that capacity. The note was not a contract at all until he had completed its execution by placing his signature on the back, by that act giving it vitality and making it payable to the person to whom it was delivered and to subsequent holders. It is true a court has said of "myself" notes: "This action is against the maker, and he became liable, as such, the moment he indorsed and delivered these notes. By that simple act, he became both maker and indorser, and liable to respond to all the liabilities of either" (*Hall v. Burton*, 29 Ill. 321, 323), but the statement was not necessary to the decision, for the defendant there was liable whether treated as either maker or indorser. In *Page v. W. F. Hallam & Co. et al.*, 212 Ill. App. 462, it was said, without citation of authority or further discussion, possibly in reliance upon the Hall-Burton case: "We also think that where a note is made payable to a maker and by the maker indorsed and delivered, the indorsement on the back of the note renders such maker liable, not only as a maker but also as an indorser of the note." (p. 473.) The plaintiff was there held to be a holder in due course. On the other hand it has been specifically held that one who signs a note payable to his own order and indorses and delivers it is liable as maker and not as indorser, and is not entitled to demand or notice, the court saying:

Consolidated Motors Co. v. Urschel.

"By indorsing his name on the back of the note and delivering it in that form to the holder, the maker does not become an indorser in the commercial acceptation of that term. He is nevertheless the maker of the note, his signature on its back being an essential part of its execution, and his liability continues to be that of a maker only." (*Ewan v. The Brooks-Waterfield Company*, 55 Ohio St. 596, 608; cited in 8 C. J. 65, note 33, and 177, note 17, and in 3 R. C. L. 1179-80, note 1.)

In the same case it is held that a third person, whose name was written on the back of the note before its delivery, was not an indorser in the legal sense, which seems contrary to the prevailing rule. (8 C. J. 81, note 93.)

In another case it was said of the maker's indorsement of a "myself" note:

"That indorsement, in the form adopted, was needed for the regular transfer of title, but does not change or affect the nature and character of the maker's liability. He remains the ultimate debtor, the person who ought to pay the debt, in preference to and in exoneration of all the other parties to the paper, who in some form or other are entitled to have final recourse to him." (*M. S. Bank v. Pierce*, 137 N. Y. 444, 446; cited in 3 R. C. L. 1136, note 12.)

Over the signature of the defendant on the back of the note upon which the present action is based appeared the same words as were upon the note in the Leach-Urschel case: "There are no conditions offsetting this note and any bank, banker, corporation or individual has my permission to purchase the same." The plaintiff's brief does not indicate that any reliance is placed upon this fact. The words quoted did not affect the negotiable quality of the note, prevent the indorsement from being an unqualified one, or otherwise affect the rights of the parties. The signing and indorsing of the note gave to an innocent purchaser all the assurance of its validity that could be conveyed by any form of words, and no language incorporated in the instrument at the time of its execution could protect one buying it with notice of its fraudulent inception.

The judgment is reversed with directions, inasmuch as the plaintiff elected to submit the case to the court for judgment upon the admissions made without attempting to prove that it acquired the note in good faith in ignorance of the fraud, to render judgment for the defendant unless a trial of that issue be allowed on the plaintiff's application.