No. 41,282

The Kansas Bankers Surety Company, *Appellant,* v. The Ford County State Bank, *Appellee.*

(338 P. 2d 309)

Opinion filed April 11, 1959.

*Floyd A. Sloan*, of Topeka, argued the cause, and *W. Glenn Hamilton*, *Eldon Sloan* and *James W. Sloan*, all of Topeka, and *E. C. Minner* and *Harry A. Waite*, both of Dodge City, were with him on the brief for appellant.

*W. D. Jochems*, of Wichita, argued the cause, and *James A. Williams*, of Dodge City, and *Harry L. Hobson*, of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action in contract to recover payment made by a drawee bank on a *raised* (altered) check, otherwise genuine, to the defendant bank, an endorsee holder in due course.

The sole question presented is whether the drawee bank is liable on its payment to the endorsee bank according to the tenor of the instrument as originally drawn or according to the tenor of the instrument as of the time of its payment.

Appeal has been duly taken to this court from a ruling of the trial court sustaining a demurrer to the petition.

The check was in the words and figures as follows:

"Garden City, Kansas Dec. 9 1955 No. ......
THE GARDEN NATIONAL BANK                              83-180
                                                    ───────
                                                      1011

Pay to the
Order of Clarence Windle                           $14,000/00
Fourteen Thousand & no/00 .. .... . .... ......  Dollars
Loan
                                        D. W. Burnett"

Endorsed on the back of the check:

" 'Clarence Windle'
"Pay any Bank or Banker or order
Ford County State Bank
All prior indorsement guaranteed
Dec. 9-1955
83-529 Spearvill, Kansas 83-529
J. A. Feist 'cashier"

The facts alleged in the petition disclose that plaintiff is a bonding company. It paid a loss for which it was liable to the Garden National Bank of Garden City, Kansas, and brings this action as subrogee of that bank. The plaintiff alleges that on or about the 20th day of November, 1955, D. W. Burnett, a depositor in the drawee bank (Garden National Bank) issued his check drawn on said bank in the amount of $90.20 payable to the order of Clarence Windle, and that Windle wrongfully altered that check by

changing the date to December 9, 1955, and the amount to $14,000; that this altered check was endorsed by Clarence Windle and presented by him to the defendant, The Ford County State Bank and by it accepted. It was further alleged that the defendant bank *"executed its unqualified endorsement on the back of said check* and sent it through usual banking channels" where it reached the drawee bank on December 14, 1955. A copy of said check, together with all endorsements thereon, was attached to the petition and made a part thereof.

The plaintiff further alleged that the drawee bank, relying on the endorsements on said check charged the account of D. W. Burnett with the altered amount of $14,000, and paid that amount to the defendant. The plaintiff further alleged that Burnett immediately after receiving his regular monthly statements notified the drawee bank on January 2, 1956, that the check was defective, and on January 3, 1956, the Garden National Bank notified the defendant by telephone that said check was a forgery or had been wrongfully altered; that an examination of said check by the Federal Bureau of Investigation established that said check had been altered, and on May 28, 1956, the plaintiff notified the defendant of that fact; that the defendant *"by its endorsement on said check, warranted said instrument to be genuine,* when and as it was a spurious instrument and of no validity."

The plaintiff further alleges that on the 5th day of February, 1956, the Garden National Bank was compelled to reimburse said D. W. Burnett in the sum of $13,909.80 and by reason of the terms of its bond plaintiff was compelled to pay said amount to the Garden National Bank and took from the bank its subrogation receipt which was attached to the petition as an exhibit.

It is conceded by the parties that the plaintiff (appellant) stands before this court in the shoes of the Garden National Bank.

It must be noted at the outset that the plaintiff at no point alleges any facts indicating any legal basis for liability except under the Uniform Negotiable Instruments Act which was enacted into law in Kansas in 1905, and now found in Chapter 52 of the General Statutes.

The Uniform Negotiable Instruments Law (hereafter N. I. L.) was designed to harmonize decisions of courts of last resort in respect to commercial paper, and to give to negotiable instruments a degree of certainty that would be universal in its application in the states enacting it. It is fundamental that the court of no state

in which the law is enacted is bound by the construction of the statute by the courts of other states; but courts, with full knowledge of the history of this legislation, and knowing that its chief purpose is as above stated, should upon all questions of construction, where the rule adopted by other states is not plainly erroneous, be disposed to follow the construction given to the act by the courts of the state in which the act has heretofore been adopted and construed. (*Cherokee Nat. Bank v. Union Trust Co.*, 33 Okla. 342, 346, 125 Pac. 464.)

Most courts considering the question concerning the Uniform N. I. L. are in accord that it is a complete codification of the law of commercial instruments governing all transactions it purports to cover. It must therefore be treated as a complete body of law on that subject and controlling in all cases to which it is applicable. (*Bank of Italy etc. Assn. v. Symmes*, 118 Cal. App. 716, 5 P. 2d 956; *Columbian Banking Co. v. Bowen*, 134 Wis. 218, 114 N. W. 451; *Vander Ploeg v. Van Zuuk*, 135 Iowa 350, 112 N. W. 807, 124 Am. St. Rep. 275.)

Parties to a negotiable instrument are presumed to understand that their contractual rights and liabilities will be determined by provisions of the N. I. L. (*Citizens Nat. Bank v. Custis*, 153 Md. 235, 138 A. 261; and *Commercial Credit Co. v. Blanks Motor Co.*, 174 Ark. 274, 294 S. W. 999.)

It is conceded by the parties that our court has not passed directly upon the question herein presented within the meaning of the N. I. L. It is therefore a case of first impression in this jurisdiction.

An early Kansas case, *Bank v. Robbins*, 71 Kan. 748, 81 Pac. 487, uses broad language in the syllabus which tends to indicate that the guarantee of an endorser on a check runs in favor of a drawee bank. This case is not in point since it arose prior to the adoption of the N. I. L. in this jurisdiction and for the further reason that it involved a forged endorsement which is clearly covered by the N. I. L.

Section 62 of the N. I. L. (G. S. 1949, 52-603) provides:

"The acceptor, by accepting the instrument, engages that he will pay it according to the tenor of his acceptance, and admits: (1) The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) the existence of the payee and his then capacity to endorse."

Dean James Bar Ames, in an article in 14 Harv. L. Rev. 241 [1900], commenting upon the effect of the different provisions of the N. I. L., said of the section now under consideration:

". . . Since an acceptor, by section 62, engages to pay the bill 'according to the tenor of his acceptance,' he must pay to the innocent payee or subsequent holder the amount called for by the bill at the time he accepted, even though larger than the original amount ordered by the drawer. A bank certifying a raised check is in the same case, since section 187 assimilates a certification to an acceptance. If the acceptor or certifying bank must honor his acceptance or certification in such a case, a *fortiori* a drawee who pays a raised bill or check, without acceptance or certification, should not recover the money paid from an innocent holder. These results are at variance with numerous American decisions, but they are changes for the better, and, so far as adopted, bring the law of this country into harmony with the law of nearly, if not indeed all, of the European states." (pp. 242, 243.)

(See also an article by Ames in 4 Harv. L. Rev. 297, on "The Doctrine of Price v. Neal.")

Before the adoption of the N. I. L. the ordinary principles of payment under a mistake of fact were applicable to negotiable instruments, with the exception of the doctrine of *Price v. Neal,* 3 Burr. 1354, 1 W. Bl. 390 (1762). In that early English case the court held the drawee who pays a bill to a holder in due course, on the forged signature of the drawer, cannot recover the money paid to the innocent holder, and the court stated an acceptor under the same circumstances would be liable on his acceptance. Dean Ames construed Section 62 of the N. I. L. in "The Doctrine of *Price v. Neal,*" supra, to extend the liability of the acceptor to *alterations prior to the date of the acceptance.* (See *City Bank v. Bank of Republic* [1921], 300 Ill. 103, 132 N. E. 832, 22 A. L. R. 1153.)

Reasons underlying the doctrine of *Price v. Neal* and the related question arising under Section 62 of the N. I. L. as to the effect of payment by a drawee on an altered order, such as we have in the instant case, have been set forth and considered, pro and con, in various law review articles. (See 24 Mich. L. Rev. 809 [1926]; 24 Col. L. Rev. 469; 4 Harv. L. Rev. 297; 8 Ore. L. Rev. 272; Brannan's Negotiable Instruments Law [7th Ed.], § 62, pp. 904, 905, 917.) Dean Ames' interpretation of Section 62 of the N. I. L. is approved in *Cherokee Nat. Bank v. Union Trust Co.,* supra; and *Wells Fargo Bk. etc. Co. v. Bank of Italy,* 214 Cal. 156, 164, 4 P. 2d 781; 79 U. of Pa. L. Rev. 492; 19 Calif. L. Rev. 210; 29 Mich. L. Rev. 503; 4 So. Calif. L. Rev. 238; 50 Yale L. J. 1106; 4 Rocky Mountain L. Rev. 224.

It is difficult to see how a drawee bank which pays a raised, but otherwise genuine instrument, to an innocent holder can escape

liability if any meaning is to be given the words "engages that he will pay it according to the tenor of his acceptance" in Section 62 of the N. I. L. The tenor of the acceptance is determined by the instrument as it is when the drawee pays and that is a bill for the raised amount. That is the bill he accepted and no other, and according to its tenor he has engaged that he will pay it. Converted to the facts in the instant case a check is defined as a bill of exchange, payable on demand, and actual payment by the drawee is greater than an acceptance by the drawee which is merely a promise in writing to pay. The payment of a check includes its acceptance. (*Louisa Natl. Bank v. Kentucky Natl. Bank,* 239 Ky. 302, 39 S. W. 2d 497.) See Brannan's Negotiable Instruments Law (7th Ed.), § 62, pp. 917, 918.

It was alleged in the petition that The Ford County State Bank "by its endorsement on said check, warranted said instrument to be genuine, when and as it was a spurious instrument and of no validity." This requires analysis of other sections of the N. I. L. to determine what, if any, warranties are imposed by the "endorsement" of The Ford County State Bank, appellee. The inquiry also leads into whether the drawee bank (Garden National Bank) in the instant case is a holder in due course.

Section 191 of the N. I. L. (G. S. 1949, 52-102) defines a "holder" as the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof. The "bearer" is a person in possession of a bill or note which is payable to bearer. Section 52 of the N. I. L. (G. S. 1949, 52-502) defines a holder in due course as "a *holder* who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the *holder* of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (Emphasis added.)

Under Section 30 of the N. I. L. (G. S. 1949, 52-401) an instrument is negotiated "when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the endorsement of the holder completed by delivery."

Some courts have spoken of the "endorsement" of a forged check by the holder when presenting it to the drawee for payment as a warrant or guarantee to the drawee. This statement is a fallacy. Such a warranty arises only in case of a sale of the instrument, not when it is presented to the drawee for payment. The payment of a check by the drawee bank is not a negotiation and does not make the bank a holder within Section 30. The check is extinguished and cannot be put in circulation again so as to bind the drawer or endorsers. (*American Hominy Co. v. Milikin Nat. Bank,* (D. C.) 273 Fed. 550; Brannan's Negotiable Instruments Law [7th Ed.], § 30, p. 592, and cases cited therein.) Further, under Section 191 the drawee bank not being a payee, endorsee, or bearer, it is not a holder.

Obviously, under Section 52 if the drawee bank upon transfer of the instrument to it upon payment does not become a holder, it cannot become a holder in due course. The Supreme Court of California in *Wells Fargo Bk. etc. Co. v. Bank of Italy,* supra, succinctly stated:

"But as has been pointed out (Brannan, The Negotiable Instruments Law, 4th ed., p. 618), the presentation of a check to a drawee for payment is not a negotiation and involves no warranties as the drawee is not a holder in due course under section 52 of the Negotiable Instruments Law . . . nor a holder as defined in section 191 thereof . . ." (p. 164.)

Section 65 of the N. I. L. (G. S. 1949, 52-606) provides in part:

"Every person negotiating an instrument by delivery, or by a qualified endorsement, warrants: (1) That the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; . . ."

Section 66 of the N. I. L. (G. S. 1949, 52-607) provides:

"Every endorser who endorses without qualification *warrants, to all subsequent holders in due course:* (1) The matter and things mentioned in subdivisions 1, 2 and 3 of the next preceding section; and (2) that the instrument is at the time of his endorsement valid and subsisting; and, in addition, he engages that on due presentment it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent endorser who may be compelled to pay it." (Emphasis added.)

It has been held the warranties of a general endorser as provided by Section 66 are based upon a transfer of title and run only to holders in due course; consequently, a drawee who has paid the instrument is not a transferee of title as the last holder's endorse-

ment does not transfer the check but converts what was a check into a voucher. (*Wells Fargo Bk. etc. Co. v. Bank of Italy,* supra; *South Boston Trust Co. v. Levin,* 249 Mass. 45, 143 N. E. 816; *Bank v. Bank,* 141 Mo. App. 719, 125 S. W. 513; *Woodward v. Trust Co.,* 178 N. C. 184, 100 S. E. 304, 5 A. L. R. 1561; *National Bank etc. v. Seattle Nat. Bank,* 109 Wash. 312, 187 Pac. 342; *American Hominy Co. v. Milliken Nat. Bank,* supra; *Figuers v. Fly,* 137 Tenn. 358, 193 S. W. 117; and Brannan's Negotiable Instruments Law [7th Ed.], § 30, p. 592.)

The Supreme Court of Oregon in *First Nat. Bk. v. United States Nat. Bk.,* [1921], 100 Ore. 264, 197 Pac. 547, has set forth the reasons why a drawee bank is not a holder in due course in clear and concise language, as follows:

"Manifestly, presentment to the drawee for payment is not a negotiation of a check; for payment transmutes the paper from a negotiable instrument into a mere canceled voucher. When paid the check has run its course as a negotiable instrument: *First Nat. Bank v. Bank of Cottage Grove,* 59 Or. 388, 396 (117 Pac. 293). It is manifest that the drawee, who pays a check and then receives it as a canceled voucher divested of its character as a negotiable instrument, is not 'a holder' within the meaning of that term as it is used in the negotiable instruments law. It follows, therefore, that the negotiable instruments law did not write into the indorsement of the defendant any of the warranties prescribed by Sections 7857 and 7858 [§§ 65 and 66 of N. I. L.], Or. L.: *National Bank v. Mechanic's American National Bank,* 148 Mo. App. 1 (127 S. W. 429); *National Bank of Commerce v. Farmers & Merchants' Bank,* 87 Neb. 841 (128 N. W. 522); *Figuers v. Fly,* 137 Tenn. 358 (193 S. W. 117); *Farmers & Merchants' Bank v. Bank of Rutherford,* 115 Tenn. 64 (88 S. W. 939, 112 Am. St. Rep. 817); *Aurora State Bank v. Bank of Rutherford,* 115 Tenn. 64 (88 S. W. 939, 112 Am. St. Rep. 817); *Aurora State Bank v. Hayes-Eames Elevator Co.,* 88 Neb. 187 (129 N. W. 279); Brannan's Neg. Inst. Law (3 ed.), 131. See, also, *Neal v. Coburn,* 92 Me. 139, 150 (42 Atl. 348, 69 Am. St. Rep. 495)." (p. 288.)

See Brannan's Negotiable Instruments Law [7th Ed.], § 66, p. 958, *et seq.,* under the annotated heading: "Presentation to drawee involves no warranties."

The appellant contends that even should this court hold that a drawee bank is not a holder in due course, there still remains the right of the drawee bank to recover on a forged instrument, or on a wrongfully altered instrument, against a prior endorser because of the implied obligation on the part of the endorser.

Cases have heretofore been cited which hold that the N. I. L. must be treated as a complete body of the law on that subject in which the liabilities of the parties are clearly defined. It has been

held that an action to enforce liability for breach of the statutory warranties under the N. I. L. was upon contract. (*Rucker v. Hagar et al.,* 117 Kan. 76, 230 Pac. 70.) It was said in *Railroad Bldg., L. & S. Ass'n v. Bankers Mtg. Co.,* 142 Kan. 564, 51 P. 2d 61, in an action involving a negotiable instrument relative to the warranty of endorsement on facts not here material:

". . . The contract must therefore find its basis in the statute, and it is clear from a reading of it that the endorser warrants only to all subsequent holders in due course." (pp. 568, 569.)

In *Consolidated Motors Co. v. Urschel,* 115 Kan. 147, 222 Pac. 745, it was said:

"The warranties assumed by the negotiator of a note are fixed by the statute, . . ." (p. 149.)

We must therefore recognize that the statutory warranties under the Uniform N. I. L. are exclusive and preclude all inferences of implied warranties. An analogous situation is presented where an express warranty is set forth in the contract. The express warranty is held to exclude an implied warranty relating to the same subject. (*Thresher Co. v. Nelson,* 105 Kan. 517, 184 Pac. 982; *Topeka Mill & Elevator Co. v. Triplett,* 168 Kan. 428, 213 P. 2d 964; and *Lumber Co. v. Kelley,* 117 Kan. 285, 231 Pac. 71.)

Based upon our study of the construction of various sections of the Uniform N. I. L. by other states in which it has been adopted, we think it was not the legislative intent that the obligation of the drawee bank paying a negotiable instrument should be limited to the tenor of the instrument as drawn by the maker, as was the rule at common law, but that it should be enforceable in favor of a holder in due course against the drawee bank paying such instrument according to its tenor at the time of its payment. In other words, the Garden National Bank was liable on its payment of the check to The Ford County State Bank according to the tenor of the check at the time of payment, which was the raised amount.

The foregoing opinion gives effect to the literal words of the N. I. L. The court must take the act as it is written and should give to the words their natural and common meaning. If the language of the act conflicts with statutes or decisions in force before its enactment the courts should not give the act a strained construction in order to make it harmonize with earlier statutes or decisions. (*City Bank v. Bank of Republic,* supra.)

The wording of the act suggests that a change in the common

law was intended. A careful reading thereof, independent of any common-law influence, requires that the words "according to the tenor of his acceptance" (N. I. L., § 62) be construed as referring to the instrument as it was at the time it came into the hands of the acceptor for acceptance, for he accepts no other instrument than the one presented to him—the altered form—and it alone he engages to pay. This conclusion is in harmony with the law of England and the continental countries. (14 Harv. L. Rev. 241, 243; and 4 Harv. L. Rev. 306, 307.) It makes for the usefulness and currency of negotiable paper (31 Yale L. J. 522, 527) without seriously endangering accepted banking practices, for banking institutions can readily protect themselves against liability on altered instruments either by qualifying their acceptance or certification or by relying on forgery insurance and special paper which will make alterations obvious. (*Wells Fargo Bk. etc. Co. v. Bank of Italy*, supra.)

Appellant asserts that where a general demurrer challenges the sufficiency of the petition to state a cause of action, the trial court does not err in overruling such demurrer if the pleadings so challenged state a cause of action on any theory. (Citing *Fernco, Inc. v. Kennedy*, 181 Kan. 25, 309 P. 2d 400.)

While not definitely stated in appellant's brief the cases upon which reliance is placed would indicate that appellant possibly regards the petition broad enough to include recovery against The Ford County State Bank on the ground that it had knowledge of the alteration, or was negligent, or was a party to the alteration. Such an action to recover the amount paid is in its nature an action for money had and received under a mistake of fact. It would be predicated upon either the acts of bad faith or culpable negligence of The Ford County State Bank which so contributed to induce the Garden National Bank to part with its money. The fundamental basis of a recovery in such case is the act of bad faith or culpable negligence of the holder as the primary cause of the loss. The check, its endorsement, and the act of presentation for payment by the holder, and its payment to it by the drawee bank, in such case is merely evidential, and not the essential basis of the action. (*Louisa Natl. Bank v. Kentucky Natl. Bank*, supra.)

While states which have adopted the Uniform N. I. L. are almost unanimous that Section 62 is merely a legislative affirmation of *Price v. Neal*, it will be observed that Section 62 does not in its

terms provide for exceptions, such as negligence of the holder or acts of bad faith on his part. But the courts, with few exceptions, have recognized negligence and bad faith on the part of the holder as exceptions which prevented the rule from operating against the drawee. It would be a more accurate statement of the rule in *Price v. Neal* itself to say that, if there is freedom from both negligence and bad faith on the part of the holder, the drawee cannot recover payment on a forged or altered check, but, if the holder is chargeable with negligence or bad faith the rule does not apply against an innocent drawee. A complete discussion of this matter has been undertaken in *First Nat. Bk. v. United States Nat. Bk.,* supra. The Supreme Court of Oregon in the opinion of that case has appropriately said:

"The negotiable instruments law is in the main a codification of the rules of the law-merchant; and in most instances where there had been a difference of judicial opinion the negotiable instruments law will upon investigation be found to have adopted the rule of the majority. With but few reported decisions to the contrary, the courts of this country which had followed *Price v. Neal* had for a century, recognized negligence upon the part of the holder as an exception which untied the hands of the drawee and enabled him to recover from the negligent holder; and in this situation it is inconceivable that the framers of the act designed to make Section 62 absolute and free from the exceptions which had been previously recognized. Section 62 has been criticised because it fails to speak of the exceptions which had come to be so generally observed (59 Univ. of Pa. Law Rev. 493); and yet the history of the *Price v. Neal* rule and the condition of the judicial decisions in this country when the negotiable instruments law was framed make it obvious that the legislatures adopted the *Price v. Neal* rule with its exceptions, although the exceptions were not expressed, just as the courts had adopted the rule with its exceptions. This court and other courts have held that the rule of *Price v. Neal* in its present form as a legislative rule is subject to the exceptions which prevailed when it existed in its form as a judicial rule: *First Nat. Bank v. Bank of Cottage Grove,* 59 Or. 388 (117 Pac. 293); Brannan's Neg. Inst. Law (3 ed.), 229." (100 Ore. 264, 281, 282.)

But the party that founds a cause of action against the drawee bank upon the theory of bad faith or negligence on the part of the holder must allege and prove *the facts, the acts of bad faith or negligence* as the case may be, upon which reliance is placed giving rise to the cause of action. (*Citizens' Nat. Bank v. San Angelo Nat. Bank* [Tex. Civ. App.], 19 S. W. 2d 388; and *Louisa Natl. Bank v. Kentucky Natl. Bank,* supra.) The petition in the instant case is entirely barren of any such allegations and as a consequence the appellant has not alleged a cause of action upon such theory.

The Supreme Court of Kentucky in *Louisa Natl. Bank v. Kentucky Natl. Bank*, supra, said:

". . . No provision of the Negotiable Instrument Law concerns such an action arising out of the negotiation of a forged instrument put into circulation by the acts of bad faith, or negligence of the holder thereof. To interpret it so as to protect a holder who had so induced the drawee to pay a forged instrument is beyond its intendment and plain language. So to construe it and apply it as to holder of a forged instrument as to protect him against his bad faith or his own negligence makes it applicable to a nonnegotiable instrument as well as to a negotiable instrument." (p. 310.)

For the reasons stated the petition in the instant case failed to state a cause of action against The Ford County State Bank in contract under the Uniform N. I. L., or on any other theory, and the order of the trial court sustaining the demurrer to the appellant's petition is affirmed.